Norman E. DESHIELDS, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 252, 1997.

Supreme Court of Delaware.

Submitted: Feb. 3, 1998.

Decided: Feb. 19, 1998.

Rehearing Denied March 9, 1998.

Rosemary Beauregard, of Betts & Beauregard, P.A., Georgetown, for appellant.

Kim Ayvazian, of the Department of Justice, Georgetown, for appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Norman E. Deshields ("Deshields"), was convicted of Robbery in the First Degree for the April 1995 hold-up of a Sussex County convenience store. Deshields was sentenced to be imprisoned for life, as an habitual offender. This is Deshields' direct appeal.

Deshields has raised two issues before this Court. Deshields' first argument is that the Superior Court erroneously permitted the facts of a subsequent robbery in May 1995 to be admitted into evidence at his trial for the April 1995 crime. Deshields' second argument is that the Superior Court abused its discretion by refusing to permit him to waive a jury trial, when the State did not object to a bench trial.

This Court has concluded that the facts of the May robbery were not admissible evidence at Deshields' trial for the prior April robbery. Therefore, the judgment of the Superior Court is reversed and this matter is remanded for a new trial. The record does not reflect that the Superior Court abused its discretion when it declined to accept Deshields' waiver of a trial by jury. Deshields can renew that request, however, prior to his new trial.

## April Robbery

On April 21, 1995, Laura Jackson[1] ("Jackson") was working the night shift at a convenience store in Sussex County. At approximately 3:30 a.m., a man entered the store, made a purchase, and left. He returned a few minutes later. He told Jackson to go behind the counter and give him the money in the register. According to Jackson, when she hesitated, he reached underneath his tee-shirt and belt with his right hand. He then pointed something heavy and bulky at her from under his shirt. Jackson thought he had a gun.

Jackson complied with his instructions and handed him approximately fifty dollars in cash. The robber then motioned for Jackson to enter a back room near the end of the counter. He gestured for Jackson to stay there until he was gone.

The robber left the store. Jackson called the police. She described the robber to the police as a short, stocky, medium-complected black man with close-cut hair and some type of facial hair, either a thin mustache or goatee.

## May Robbery

Jackson next saw the robber on May 13, 1995, when he walked into the same convenience store at approximately 6:00 a.m. She recognized him within a few seconds. When he walked up to the register and told her to give him the money, she refused. He repeated his request. Jackson locked the register and stepped back.

At that point, the man reached underneath his shirt with his right hand and pointed his concealed hand at her. According to Jackson, she was not convinced this time that he had a weapon. He became agitated and repeated his orders. Jackson removed the key from the register, and refused again.

Eventually, the man took approximately fifty dollars out of the register and left the store. Jackson watched him leave. She noted the license number on his car and notified the police. Deshields' car was stopped and he was arrested.

1. This is a pseudonym selected by the Court.

## Procedural History

Deshields originally was indicted and tried on two charges of Robbery in the First Degree, arising from the April 21 and May 13, 1995 incidents at the convenience store. On March 7, 1996, Deshields was convicted of Robbery in the First Degree for the April 21, 1995 incident, and Robbery in the Second Degree as a lesser-included offense for the May 13, 1995 incident. Deshields was granted a new trial on the basis of juror misconduct.

Prior to his new trial, Deshields agreed to plead guilty to Robbery in the Second Degree for the May 13, 1995 incident. With regard to the April robbery, Deshields' attorney informed the presiding judge during an office conference that he was only going to contest the degree of guilt at trial. Deshields' attorney also filed a motion *in limine* to prevent the admission at his new trial, on the April charge, of "the facts and circumstances" surrounding the May 13 robbery for which he had pled guilty.

## Motion In Limine
## Subsequent Crime Evidence

The indictment charged Deshields with Robbery in the First Degree, alleging that on April 21, 1995, he did:

> in the course of committing theft, use the threat of force upon one [Laura Jackson] with intent to overcome resistance to the taking of property ... and in the course of the commission of that crime displayed what appeared to be a deadly weapon to wit: did place his hand under his shirt in a manner to make it appear that he possessed a gun, in violation of Title 11, Section [832(a)(2)] of the Delaware Code.

Deshields contended that, since he had confessed to the police that he was present at the convenience store on April 21 and that he took money from Jackson, his identification was not at issue. Therefore, Deshields argued that the manner in which he committed the second robbery was unnecessary to es-

tablish his identity and would be prejudicial if presented to the jury.

Although *modus operandi* is generally used to establish identity and Deshields' identity was not at issue, the State argued that the evidence of the May robbery was still admissible, since Deshields was contesting his degree of guilt for the April robbery. According to the State, the circumstances of the second robbery in May demonstrated that Deshields tried to convince Jackson he had a weapon by reaching underneath his shirt with his right hand, just as he had done during the first robbery in April. The Superior Court ruled that the *modus operandi* evidence of the May robbery was admissible, as part of the state's case-in-chief for the April robbery, to show absence of mistake or an intent on Deshields' part to convince Jackson, by gesturing, that he had a weapon.

### Other Crimes
### Generally Inadmissible
### Exceptions Require Balancing

■ Evidence of other crimes is generally inadmissible to prove the commission of the offense charged. *Getz v. State*, Del. Supr., 538 A.2d 726, 730 (1988). The general rule is intended to prevent the State from proving the charged offense by evidence of other crimes on the theory that the defendant acted in conformity with those other bad acts in committing the charged offense. Thus, the State cannot use *another offense to establish that the defendant had a propensity to commit the charged offense.* D.R.E. 404; *Getz v. State*, 538 A.2d at 730.

■ The prohibition against other crime evidence is not absolute. D.R.E. 404(b). Such evidence may be admitted properly for other purposes, for example, to show: motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. D.R.E. 404(b). Evidence of other crimes may also be admitted where two crimes constitute one transaction and proof of one necessarily requires proof of the other. *Getz v. State*, 538 A.2d at 730.

This Court has articulated a six-part analysis, for the guidance of trial judges, concerning the admissibility of other crime evidence by the State. *Getz v. State*, 538 A.2d at 734. The first two parts of the *Getz* outline are relevant to Deshields' appeal:

(1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.

(2) *The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.*

*Id.*

■ The fact that other crime evidence comports with one of the exceptions listed in Rule 404(b) does not make it admissible *per se*. *Getz v. State*, 538 A.2d at 730. Delaware Rule of Evidence 404(b) is identical to Federal Rule of Evidence 404(b). *Tice v. State*, Del.Supr., 624 A.2d 399, 400 n. 1 (1993). Professor Graham Lilly has concluded "[f]rom the language of the [Federal] Rule, as well as its legislative history, it is clear that the federal drafters created an open system in which a trial judge neither mechanically excludes, nor routinely accepts, other crimes evidence: rather, she [or he] determines admissibility on the basis of such factors as probative value, potential prejudice, and the availability of alternative forms of evidence." Graham C. Lilly, *An Introduction to the Law of Evidence* § 5.14, at 169 (3d ed. 1996).

■ Professor Lilly also notes that another treatise sets forth a thoughtful enumeration of " 'at least' nine factors that a court should consider in applying the Rule 403 balancing test to Rule 404(b) evidence: (1) the extent to which the point to be proved is disputed; (2) the adequacy of proof of the prior conduct; (3) the probative force of the evidence; (4) the proponent's need for the evidence; (5) the availability of less prejudicial proof; (6) the inflammatory or prejudicial effect of the evidence; (7) the similarity of the prior wrong to the charged offense; (8) the effectiveness of limiting instructions;

and (9) the extent to which prior act evidence would prolong the proceedings." Graham C. Lilly, *An Introduction to the Law of Evidence* § 5.15, at 177–78 (3d ed. 1996) (citing C. Mueller & L. Kirkpatrick, *Federal Evidence* § 4.21, at 268–71 (1995)). In addition, if other crime evidence is admitted during the State's case-in-chief to prove the charged offense, it must have independent logical relevance and the jury should be carefully instructed regarding the limited purpose for which it can be considered. *Getz v. State,* 538 A.2d at 730–31, 734. *See also Allen v. State,* Del.Supr., 644 A.2d 982, 984–85 (1994).

### First Degree Robbery
### Displaying Deadly Weapon

■ A person is guilty of Robbery in the Second Degree when, in the course of committing theft, he or she threatens the immediate use of force against another to compel that person to surrender or deliver up the property. 11 *Del.C.* § 831(a)(2). To elevate that offense to the level of Robbery in the First Degree, the State must prove the elements of second degree robbery plus one additional element. 11 *Del.C.* § 832(a). A defendant can be convicted of first degree robbery if, in the course of committing the robbery, he or she "displays what appears to be a deadly weapon." 11 *Del.C.* § 832(a)(2). Accordingly, the State, in seeking a first degree robbery conviction, was required to prove during its case-in-chief that Deshields "display[ed] what appear[ed] to be a deadly weapon" during the April 1995 incident. *See* 11 *Del.C.* § 832(a)(2).

■ This Court has held that the terms "displays" and "appears" must be construed with a view toward the victim's perception. *State v. Smallwood,* Del.Supr., 346 A.2d 164, 166 (1975). Those terms obviously encompass the robber who actually physically displays a deadly weapon to the victim. Those terms also encompass the robber "who intimidates by otherwise manifesting the presence of such a weapon even though it is not seen by the victim." *State v. Smallwood,* 346 A.2d at 167. *Accord Harrigan v. State,* Del.Supr., 447 A.2d 1191, 1193 (1982); *DeShields v. State,* Del.Supr., No. 415, 1987, Holland, J., 1988 WL 71442 (June 28, 1988) (ORDER).

■ Moreover, the words "displays" and "appears," as used in 11 *Del.C.* § 832, do not require that the assailant actually be armed. To establish those terms, the State is not required to prove that a deadly weapon was in fact used. The victim's subjective belief that the defendant possessed a deadly weapon is sufficient to support a conviction for Robbery in the First Degree. *Williams v. State,* Del.Supr., 494 A.2d 1237, 1242 n. 1 (1985). *See Harrigan v. State,* 447 A.2d at 1193. However, there must be more than the victim's fear of the existence of a deadly weapon. *Johnson v. State,* Del.Supr., No. 306, 1990, Walsh, J., 1991 WL 28889 (February 21, 1991) (ORDER). For example, the victim must see a bulge or suggestion that the defendant's clothing contained a weapon. *Id.* When the victim's subjective belief is accompanied by an objective physical manifestation that the robber appears to be displaying a deadly weapon, it is sufficient evidence to establish that necessary element of Robbery in the First Degree. *Id.*

### Victim's Testimony Sufficient
### Deadly Weapon Apparently Displayed

■ In this case, the only matter in dispute was whether the April offense was a first or a second degree robbery. That determination turned on whether the State could prove the charge in the indictment that Deshields "displayed what appeared to be a deadly weapon to wit: did place his hand under his shirt in a manner to make it appear that he possessed a gun...." *See* 11 *Del.C.* § 832(a)(2).

When the motion *in limine* was argued, the State knew that Deshields did not announce any intention to shoot Jackson on April 21, 1995 and that Jackson did not see a gun. Instead, Deshields had conveyed his meaning to Jackson through gestures, in order to overcome her hesitation in responding to his demand to give him the money. The State's proffered purpose in introducing the *modus operandi* evidence of the May robbery, during its case-in-chief during the April robbery, was to demonstrate the intent be-

hind or the absence of a mistake in Deshields' gestures to Jackson.

The record reflects, however, that the content of Jackson's testimony was known to the Superior Court and the parties at the time of the motion *in limine.* Jackson had given statements to the police and had testified at Deshields' first trial. According to Jackson's known accounts of the April robbery, she saw a bulge and thought that Deshields' gestures meant he had a gun. Jackson testified consistently with those prior recitations at the second trial for the April robbery, to wit:

> He took his right hand and reached up under the tee shirt he was wearing. My eyes automatically went to it. By now, I'm catching on here, this is what is happening. I'm watching that hand and he kind of put it down in front underneath his belt in the front of his pants and lifted it back up and pointed something out from underneath the shirt. *There was a bulk or bulge* or whatever it was there. . . . *It appeared to be heavy and bulky.* Frankly, *I felt he had a weapon* and I was pretty convinced it wasn't a knife. It didn't appear to take the shape of a knife. . . . *I thought he had a gun.* . . . When I saw that, I went ahead and did what he told me to do.

(emphasis added).

In *Getz,* this Court stated: "where, as here, the State presents direct evidence, through the testimony of the alleged victim, that an attack occurred, no evidential purpose is served by proof that the defendant committed other intentional acts of the same type." *Getz v. State,* Del.Supr., 538 A.2d 726, 733 (1988). Nevertheless, at Deshields' trial, as in *Getz,* the State sought to prove the charged crime by proving another crime against the same victim.

Trial courts must "carefully examine offers of proof to insure that acts of [other] miscon-

duct have independent logical relevance and do not further the purpose of showing predisposition to commit the crime charged." [2] *Allen v. State,* Del.Supr., 644 A.2d 982, 984–85 (1994). Given the victim's eyewitness testimony at Deshields' trial, as in *Getz,* evidence of other crimes against the same victim had no independent logical relevance to a material issue in dispute. Therefore, evidence of the May robbery was inadmissible during the State's case-in-chief against Deshields for the April robbery. The admission of that evidence constituted reversible error.

### Jury Trial Waiver
### Presiding Judge's Discretion

■■■■ A criminal defendant's right to a trial by jury is guaranteed both by the Delaware and United States Constitutions. Del. Const. art. 1, § 7; U.S. Const. art. 3, § 2; U.S. Const. amend. 6. *See Claudio v. State,* Del.Supr., 585 A.2d 1278 (1991). The Supreme Court has stated, "since trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury." *Adams v. United States ex rel. McCann,* 317 U.S. 269, 278, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942). Thus, an accused can waive his or her right to a jury trial. *See Patton v. United States,* 281 U.S. 276, 299, 50 S.Ct. 253, 258, 74 L.Ed. 854 (1930) and *Adams v. United States ex rel. McCann,* 317 U.S. at 275, 63 S.Ct. at 240.

The United States Supreme Court has determined, however, that a defendant does not have a constitutional right to insist on trial by judge alone. *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). Both *Patton* and *Adams* conditioned a defendant's jury trial waiver on the consent of the prosecution and "approv[al] by the responsi-

---

**2.** In the commentary to D.R.E. 404, the drafting committee recommended "that consideration should be given to amending the Superior Court Criminal Rules to provide notice to the defendant if the prosecution intends to offer evidence of other criminal offenses." (citing Florida Rules of Evidence, Section 90.404(b)). The Superior Court and the other trial courts in Delaware are urged to re-examine this recommendation. If such notice was provided to the defendant, it might be followed by a motion *in limine.* The trial judge could then address the admissibility of the other crime evidence in a pretrial context rather than during the middle of a trial. Pretrial notice to the defendant would usually be directed toward use of other crime evidence during the State's case-in-chief and should not be a predicate for a permitted use of other crime evidence for impeachment or rebuttal.

ble judgment of the trial court." *Adams,* 317 U.S. at 277–78, 63 S.Ct. at 241; *Patton,* 281 U.S. at 312, 50 S.Ct. at 263. Those two requirements are embodied in Federal Rule of Criminal Procedure 23(a), and Delaware Superior Court Criminal Rule 23(a). *See Polk v. State,* Del.Supr., 567 A.2d 1290, 1294 (1989).

 The record reflects that Deshields expressed his desire for a bench trial without giving any reason. He now contends that the Superior Court abused its discretion, but makes no argument that the denial of a bench trial interfered with his right to a fair trial. Deshields relies on the argument that the "threshold at which the trial court abuses its discretion in ordering a jury trial when the State *consents* would be much lower" than when the State objects to such a request.[3]

The decision whether to accept or deny the defendant's waiver of a trial by jury is within the discretion of the presiding judge. *Patton v. United States,* 281 U.S. at 312, 50 S.Ct. at 263; *Fetters v. State,* Del.Supr., 436 A.2d 796, 799 (1981). The trial court's decision is reviewed by this Court for abuse of discretion. *Polk v. State,* 567 A.2d at 1295. This Court has held that "in exercising his [or her] discretion over a motion to waive a jury trial, a trial judge must 'avoid unreasonable or undue departure from that mode of trial [trial by jury], ... and with caution increasing in degree as the offenses dealt with increase in gravity.'" *Polk v. State,* 567 A.2d at 1295 (emphasis deleted) (alteration in original) (citations omitted). The record reflects that the trial judge exercised his discretion in an appropriately cautious manner given the severity of the penalty Deshields faced as a potential habitual offender.

**Conclusion**

The judgment of the Superior Court is reversed and this matter is remanded for a new trial.

---

**3.** The United States Supreme Court has suggested that there might be occasions when a defendant would be entitled to a bench trial even over the prosecution's objection. *Singer v. United States,* 380 U.S. 24, 37, 85 S.Ct. 783, 791, 13 L.Ed.2d 630 (1965). *See Polk v. State,* 567 A.2d at 1295 (citing *Singer v. United States,* 380 U.S. at 37–38, 85 S.Ct. at 791, for the proposition that there might be circumstances "where 'passion, prejudice ... public feeling' or some other factor may render impossible or unlikely an impartial trial by jury."); *Young v. State,* Del.Supr., 407 A.2d 517, 519 (1979). Federal Circuit Courts have occasionally found such circumstances. *United States v. Panteleakis,* 422 F.Supp. 247, 250 (D.R.I.1976) (complex case); *United States v. Braunstein,* 474 F.Supp. 1, 12–18 (D.N.J.1979) (complex case) (collecting cases); *United States v. Lewis,* 638 F.Supp. 573 (W.D.Mich.1986) (religious objection to jury trial).