**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE )
)
    v. )    I.D. No.    1806006562
)
PRESTON A. WARD )
)
    Defendant. )

Submitted: November 1, 2021
Decided: February 23, 2022

**OPINION**

*Upon Defendant, Preston Ward's, Motion for Postconviction Relief,*

**DENIED**

**BACKGROUND AND PROCEDURAL HISTORY**

On direct appeal, the Delaware Supreme Court, in its September 28, 2020 Order, made the following findings:

Ward and his wife, M.W., lived together in a three-bedroom home along with their three children. The eldest, A.M., was M.W.'s biological daughter and Ward's stepdaughter; the youngest two were the Wards' biological sons.

On Sunday, June 10, 2018, M.W. was awoken briefly between 5:00 and 6:00 a.m. by Ward, who asked her whether she had a dollar to put

1

under A.M.'s pillow. A.M. had lost a baby tooth the night before and put the tooth under her pillow for the tooth fairy. The record indicates that after speaking with her husband, M.W. fell back asleep. Sometime later she was awoken by her 6-year old son who wanted her to fix something on the TV. She told him to have his father do it, but the son said Ward was at work. Knowing this could not be true because her husband did not work on Sundays, M.W. got up and looked around for her husband. While doing so, she noticed that A.M.'s bedroom door was shut. This was unusual to her, as it was the custom in their home to leave doors open. She opened the door. The room was still dark, but M.W. saw her husband, wearing a t-shirt and underwear, laying on the bed next to A.M. Ward immediately "jumped out" of A.M.'s bed and fell. M.W. also saw A.M. pull up her pajama bottoms. M.W. began screaming and yelling, and asked Ward what was going on. She grabbed his genitals through his clothes and realized he was not aroused. Ward told her, "See, I'm not hard."

 M.W. called her sister-in-law over to the house. When the sisterin-law arrived, she told Ward he should leave. She and M.W. then took A.M., who was eleven years old at the time, to Christiana Hospital. At Christiana Hospital, Anita Symonds, R.N., a forensic nurse examiner,

performed a sexual assault examination on A.M. As part of that examination, Symonds took swabs of A.M.'s vaginal area. During the examination, in response to Symonds' questions, A.M. stated that Ward had touched her vagina with his hand that morning. Symonds observed no genital injuries on A.M., and A.M. indicated that she had no pain in that area. Symonds testified during direct examination at Ward's trial that, in her experience, less than 10 percent of potential victims of sexual abuse have genital injuries, so it was not unusual that she did not observe any injuries on A.M. This testimony is the subject of Ward's third claim on appeal. Defense counsel did not object to Symonds' testimony.

Christiana Hospital reported A.M.'s allegations of sexual abuse to the New Castle County Police Department, which opened an investigation. M.W. was instructed to take A.M. to A.I. DuPont Hospital. Once there, A.M. was interviewed by Amy Kendall of the Children's Advocacy Center (CAC). Kendall recorded her interview of A.M. In the interview, A.M. told Kendall that Ward had touched her vagina and had done so before. She had not said anything about the prior incidents to her mother. She expressed concern that M.W. and

Ward would get divorced. She also told Kendall that the prior incidents had started maybe a few months earlier and occurred less than once a week. She said that she was eleven when all the incidents took place.

Police arrested Ward and collected a DNA sample from him. Officers also collected swabs from A.M.'s bedsheets. Officers sent the swabs taken at Christiana Hospital, the swabs from the bedsheets, and Ward's DNA sample to the Division of Forensic Science in Wilmington, Delaware, for testing. Testing was performed at the Division of Forensic Science by Bethany Kleiser. She testified at trial that she found that swabs from A.M.'s vagina and the swabs from the bedsheets tested positive for male DNA. From the sample taken from A.M.'s fitted sheet, she testified, "Preston Ward c[ould] ... be included as [a] potential DNA contributor," and the likelihood "of randomly selecting an unrelated individual that c[ould] be included as a contributor to the mixture ... in this case [i]s one in 76,980,000" or "about 76 Delawares [sic] as far as the amount of people in order to find another person included in this mixture." She also testified that the sample taken from the fitted sheet had a "strong positive reaction" to a Brentamine test, a test specifically designed to test for the presence of seminal fluid. While she could not definitively say that what she

observed was seminal fluid, she noted that the Brentamine test indicated a positive reaction with regard to the sample from the fitted sheet. Because of that reaction, she took the sample through further testing and discovered that the sample did not contain any seminal fluid.

At trial the State offered A.M.'s prior, recorded statement to Kendall at the CAC into evidence. In direct examination of A.M. before the § 3507 statement was admitted, the State asked A.M. whether she talked to people other than her mother that day about what had happened, and she answered that she had. When asked whether she was "trying to tell them the truth" when she talked to people the morning of the incident, she answered, "I don't remember, but I – I tried, but I don't – I don't know." When specifically asked about the CAC interview, she said she spoke to the interviewer about what had happened that morning and did so voluntarily. Defense counsel did not raise any § 3507 foundational objection to admission of the statement. Defense counsel did object, however, on Rule 4045 grounds, to those parts of the statement in which A.M. indicated that Ward had sexually touched her on previous occasions.

Ward was found guilty of Sexual Abuse of a Child by a Person in a Position of Trust in the Second Degree. Ward was sentenced on November 19, 2019 to 8 years Level 5 incarceration, suspended for 6 months Level 4 home confinement followed by 2 years Level 3 supervision. Ward was required to register as a sex offender pursuant to statute.

The Supreme Court denied Ward's appeal. Ward filed a Rule 61 Motion for Postconviction Relief on September 23, 2021. The Motion then was assigned to a Superior Court Commissioner pursuant to 10 *Del. C.* § 512(b) and Superior Court Criminal Procedure Rule 62. The assigned Commissioner subsequently was appointed as a Court of Common Pleas Judge. The pending motion reverted to the assigned Superior Court Judge.

## LEGAL ANALYSIS OF CLAIMS

### *Rule 61 Standard of Review*

Before considering the merits of the claims, the Court first must determine whether there are any procedural bars to the Motion.[1] This is Defendant's first motion for post-conviction relief, and it was timely filed.[2] Pursuant to Superior Court Criminal Rule 61 (i)(3) and (4), any ground for relief that was not previously

---

[1] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[2] *See* Super. Ct. Crim. R. 61 (i)(1) (motion must be filed within one year of when conviction becomes final); Super. Ct. Crim. R. 61(m)(1) (If the defendant does not file a direct appeal, the judgment of conviction becomes final 30 days after the Superior Court imposes sentence).

6

raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal *habeas corpus* proceeding, are thereafter barred.[3] Ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by a motion for postconviction relief.[4]

In order to prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that the deficiencies in counsel's representation caused the defendant actual prejudice.[5] To prevail in the context of a case involving a guilty plea, Defendant must show that but for counsel's errors, there is a reasonable probability that Defendant would not have pleaded guilty and instead would have insisted on going to trial.[6] Defendant also must overcome a strong presumption that counsel's conduct was reasonably professional under the circumstances.[7] Further, mere allegations of ineffectiveness will not suffice, rather, Defendant must make and

---

[3] *See also* Super. Ct. Crim. R. 61(i)(5) and (d)(2)(i), (ii) (setting forth exceptions to the procedural bars).

[4] *Whittle v. State*, 2016 WL 2585904, at *3 (Del.); *State v. Evan-Mayes,* 2016 WL 4502303, at *2 (Del. Super.).

[5] *Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984); *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[6] *Albury v. State,* 551 A.2d 53, 59 (Del. 1988) (quoting *Strickland,* 466 U.S. at 694).

[7] *State v. Wright,* 653 A.2d 288, 293-94 (Del. Super. 1994) (citations omitted).

substantiate concrete allegations of actual prejudice.[8]  Great weight and deference are given to tactical decisions by the trial attorney and counsel cannot be deemed ineffective for failing to pursue motions that lack merit.[9]

***

### *Foundation for 11* **Del. C.** *§ 3507 Prior Recorded Statement*

11 *Del. C.* § 3507 provides:

> (a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to crossexamination may be used as affirmative evidence with substantive independent testimonial value.

> (b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.[10]

In *Collins v. State*, the Delaware Supreme Court established that "a purpose of § 3507 is to allow the admission into evidence the out-of-court statements of turncoat witnesses."[11]  This allows the jury to assess the credibility of the witness who testified about prior statements.[12]

In *Stevens v. State*, the Supreme Court reinforced that evidence is only admissible under § 3507 if it is "the voluntary out-of-court statement of a witness who is present

---

[8] *Younger*, 580 A.2d at 556.
[9] *State v. Miller,* 2013 WL 871320, at *4 (Del. Super.).

and subject to cross-examination."[13]  The "statute must be construed narrowly in order to preserve 'a defendant's constitutional rights to confront and cross-examine witnesses providing testimonial evidence.'"[14]

---

[10] 11 *Del. C.* § 3507.
[11] 56 A.3d 1012, 1019 (Del. 2012)
[12] *Id.*
[13] 3 A.3d 1070, 1072 (Del. 2010).
[14] *Id.* at 1072-73.

[10]In *Woodlin v. State*, the Delaware Supreme Court reaffirmed the holding in *Keys v. State* to further clarify the foundational requirements of § 3507.[15]  The *Keys* Court held: "In order to offer the out-of-court statement of a witness, the Statute requires the direct examination of the declarant by the party offering the statement, as to both the events perceived or heard and the out-of-court statement itself."[11]  The witness must testify "about both the events and whether or not they are true."[1213]  In *Moore v. State*, the Supreme Court further elaborated that § 3507 does not require "that the witness either affirm the truthfulness of the out-of-court statement or offer consistent trial testimony."[18]  "[O]ut-of-court statements are admissible even where the witness

---

[10] A.3d 1084, 1087 (Del. 2010).
[11] *Id.* (citing *Keys v. State*, 337 A.2d 18, 20 n. 1 (Del. 1975)).
[12] *Id.* at 1088; *see Ray v. State*, 587 A.2d 439, 443 (Del. 1991).
[13] WL 67104, at *2 (Del. 1995); *see Ray v. State*, 587 A.2d 439, 443 (Del. 1991).

cannot remember either the events of the alleged crime or the outof-court statements."[14]

In this case, the victim was asked numerous times whether she remembered talking to other people on the day the crime occurred. The victim's responses were that she spoke with others about "things, like, what happened that morning….I don't remember. I think, or I know I, like, just answered their questions." The victim was asked if she was trying to tell the truth. She answered: "I don't remember, but I – I tried, but I don't – I don't know." Further, the victim was asked if she remembered

going to the hospitals. The victim stated that she went to the hospitals and talked about "[w]hat happened that morning." The victim confirmed that no one forced her to talk or told her what to say.

The Court finds that the trial transcript, when read in context, demonstrates that the questioning at trial established the foundational requirement of inquiring into the truthfulness of the statements. The victim testified she "tried" to tell the truth. Her answer encompasses both conversations which took place the day she was questioned. The questioning sufficiently addressed the truthfulness of both § 3507 statements. Therefore, Counsel had no duty to object to the admission of the

_____

[14] *Id.*

§ 3507 statements on that basis. Defendant suffered no prejudice as a result of Counsel's failure to object.

### *Rule 404(b) Prior Bad Acts Evidence*

Delaware Rule of Evidence 404(b) provides:

(1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Counsel argues that the Superior Court abused its discretion by admitting evidence of Defendant's prior bad acts pursuant to D.RE. 404(b). Defendant claims the evidence failed to meet the foundational requirements of *Getz v. State*.[20] In *Getz*, the Supreme Court set forth guidelines that govern the admissibility of prior bad acts:

(1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue. (2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition. (3) The other crimes must be proved by evidence which is "plain, clear and conclusive." (4) The other crimes must not be too remote in time from the charged offense. (5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403. (6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.[21]

11

Defendant also argues that the Superior Court's failure to apply the nine *Deshields* factors—to conduct the balancing test that the fifth *Getz* factor requires—disregarded a clear rule of law and was an abuse of discretion. In *Deshields v. State*, the Court set forth nine factors a court should consider in applying the Rule 403 balancing test to Rule 404(b) evidence:

> (1) the extent to which the point to be proved is disputed; (2) the adequacy of proof of the prior conduct; (3) the probative force of the evidence; (4) the proponent's need for the evidence; (5) the availability of less prejudicial proof; (6) the inflammatory or prejudicial effect of the evidence; (7) the similarity of the prior wrong to the charged

---

[20] 538 A.2d 726 (Del. 1988).

[21] *Id.* at 734.

> offense; (8) the effectiveness of limiting instructions; and (9) the extent to which prior act evidence would prolong the proceedings.[22]

Additionally, "if other crime evidence is admitted during the State's case-in-chief to prove the charged offense, it must have independent logical relevance and the jury should be carefully instructed regarding the limited purpose for which it can be considered."[23]

At trial, Defendant's Counsel argued that the prior conduct the State was trying to use to establish credibility was ambiguous. During an interview with the victim, a few dates were provided but details were not given. During the same interview, the victim recanted those dates. Trial Counsel further argued that if an

act did occur on the alleged dates, the State would have indicted Defendant on those acts. Because of the lack of an indictment, Counsel believed the State could not rely on such evidence to bolster credibility of the witness. Counsel argued that the statement was not credible and relevance was minimal.

The State countered that during the victim's disclosure, the victim indicated on multiple occasions that these prior acts had occurred. The State believed this disclosure went to the credibility of the victim. The State argued the disclosure speaks to the victim's reaction to the incident as a whole. The State further asserted that the prior information should be admitted regarding credibility, motivation to lie,

---

[22] 706 A.2d 502, 506–07 (Del. 1998).
[23] *Id.* at 507.

and bias. Further, the evidence is relevant not only for credibility, but to describe the relationship between the victim and Defendant.

The Superior Court then conducted a D.R.E. 403 balancing test pursuant to the fifth factor of the *Getz* guidelines. The Court found that the probative value of the alleged prior bad acts was not substantially outweighed by the danger of unfair prejudice. Further, the alleged bad acts were found not to be too remote in time from the charged offense and were admitted for a limited purpose.

The Superior Court held the following regarding D.R.E. 404(b):

> I find that the evidence is used for another purpose and is going to be admissible to demonstrate intent, absence of mistake on the part

of the witness, and lack of an accident. So the repetitive nature of the conduct goes to those issues. It's also relevant when the credibility of the witness is being attacked, but I think in this case more importantly it goes to absence of mistake, lack of accident, intent, it even goes toward knowledge and perhaps plan. So I am denying the Defense motion to exclude those past alleged acts, but I will give the instruction to the jury.

The Superior Court held the following regarding the D.R.E. 403 balancing test for the fifth *Getz* factor:

I have conducted a balancing analysis pursuant to Rule 403 in which I have found that the probative value of the alleged prior bad acts is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or presents cumulative evidence. I also find that the prior alleged bad acts are not too remote in time from the charged offense, and that I am going to instruct the jury that the evidence will be admitted for a limited purpose and not for the purpose of them concluding on the basis of that evidence that the Defendant committed the charged act on the occasion contained in the indictment.

On appeal, the Delaware Supreme Court held the following regarding D.R.E. 404(b):

On appeal, for the first time, Ward also argues that the prior bad acts evidence was not "plain, clear, and conclusive;" that it was too remote in time; that its probative value was substantially outweighed by its prejudicial effect; and that the Superior Court failed to give the necessary limiting instruction contemporaneously when the evidence was admitted, instead waiting to include it in the final jury instructions. We are satisfied that the evidence was sufficiently "plain, clear, and conclusive," as it took the form of the prior statement of the alleged victim of those prior acts, A.M. Although A.M.'s prior statement was at times inconsistent and sparse on details, she was unequivocal in her responses to Kendall that Ward had previously touched her vagina in the same manner in which he touched her the morning of her interview with Kendall. We also find that the evidence was not too remote in time

14

to be admissible. While A.M. could not provide the precise dates of those alleged prior incidents or the number of prior incidents that took place, she consistently maintained that all of the prior incidents had to have occurred in the months prior to the incident for which she was being interviewed because she was eleven years old when the incidents began and she was still eleven years old at the time of the incident for which Ward was ultimately convicted. Next, while the trial court did not go through the *Deshields* factors on the record, we see no plain error in its ruling that the probative value of the other bad acts evidence was not substantially outweighed by the danger of unfair prejudice. Finally, there is no merit to Ward's claim that the Superior Court erred in not giving the limiting instruction to the jury contemporaneously with the presentation of the statement. While that is a better practice, Ward does not cite any case law suggesting that the trial court must provide the *Getz* limiting instruction in such a fashion, at least not in the absence of a request from defense counsel that it do so. In sum, any legal error in the just discussed arguments which Ward makes for the first time on appeal, if any, is not basic, serious, and fundamental in its character, did not clearly deprive the accused of a substantial right, or clearly show manifest injustice.[15]

In this case, the Court finds that it properly applied the *Getz* factors. The Supreme Court found that the issue was preserved by Trial Counsel for appeal. The Trial Court did not err by basing the ruling on Counsel's proffer, rather than reviewing the actual statement.

Under *Deshields*, admission of the evidence was not an abuse of discretion. The Supreme Court addressed this issue on direct appeal. The Supreme Court held that prejudice did not result from Trial Counsel not requesting that the Trial Court review the statement verbatim prior to ruling. Further, the Supreme Court held prejudice

---

[15] *Ward v. State*, 2020 WL 5785338, at *6 (Del.).

did not result from Trial Counsel's failure to object to the Trial Court's 404(b) analysis or to application of the *Deshields* factors.

### *Statistical Evidence*

Defendant argues Trial Counsel's failure to object to Nurse Symond's testimony -- that in her experience less than ten percent of children who may be victims of sexual assault manifest physical injury -- was not a reasonable trial strategy. Defendant claims Symond's experience in other cases is not relevant to whether a sexual assault occurred in this case. Additionally, any statistics the forensic nurse may have learned during training constitute inadmissible hearsay. Defendant further argues the use of the statistics to support the premise that the victim was sexually assaulted, despite the lack of physical injury, is improper.

---

Defendant asserts that the unfair prejudice of the statistics outweighs any probative value, and that the statistics likely had a distorting effect on the jury.

At trial, based on the history obtained during conversation with the mother and victim, Nurse Symond conducted a sexual assault exam and collected potential evidence. During the examination it was noted that the victim did not have any genital injuries. Nurse Symond attested that the lack of injury was normal, based on her training and experience with children. Nurse Symond testified that approximately less than ten percent of child victims of sexual assault have any

16

genital injuries. While proceeding with the examination, Symond's asked the victim if she had been touched in the areas she was investigating. The victim indicated she had been touched, but she did not have any pain.

In *Wheat v. State*, the Delaware Supreme Court ruled that the expert's role in in child sex abuse cases is to "provide the trier of fact with background concerning the behavior of the alleged child abuse victim based on the expert's experience and training so that the jury, or judge, may place the child witness' testimony in a behavioral context."[25] The Supreme Court outlined the following conditions for admissibility:

1. The State must provide notice of its intention to use such a witness sufficiently in advance of trial to enable the defendant to prepare to cross-examine the witness. There is a fundamental inconsistency in seeking acceptance of an expert witness' testimony on the basis of

---

[25] 527 A.2d 269, 275 (Del. 1987).

its scientific or specialized value while resisting application of the pretrial notice requirements which attend the use of scientific and specialized evidence.

2. Any *voir dire* concerning the qualifications or subject areas of proposed testimony of the witness must be conducted out of the presence of the jury.

3. If the witness qualifies as an expert, the witness may express opinions consistent with the holding in this case. The expert may not directly or indirectly express opinions concerning a particular witness' veracity or attempt to quantify the probability of truth or falsity of either the initial allegations of abuse or subsequent statements.

4. In a jury trial, the jury must be specifically instructed concerning the significance of the expert's testimony. Where evidence is admissible only for a specific, limited purpose, the court must guide the jury's discretion by ensuring that the jury understands the evidence's inherent limitations.[16][17]

In *Floray v. State*, the Supreme Court reinforced the safeguards imposed under *Wheat*.[27] The Court held: "The general rule is that the common experience of the jury provides a sufficient basis to assess the credibility of the child-witness and the testimony of an expert witness is not necessary to assist the jury."[18] However, the Court noted an exception to the general rule regarding intrafamily child sex abuse cases.[19]

> Expert testimony is admissible to help the jury understand the childvictim's behavior when the child "has displayed behavior (... delay in

> reporting) or made statements (... recantation) which, to [an] average [lay person], are superficially inconsistent with the occurrence of sexual abuse and which are established as especially attributable to intrafamily child sexual abuse rather than simply stress or trauma in general.[20]

"The use of expert evidence in child sexual abuse prosecutions is limited 'to assist the finder of fact . . . in evaluating the psychological dynamics and resulting

---

[16] *Id.* at 275-76.
[17] A.2d 1132, 1135 (Del. 1998).
[18] *Id.*
[19] *Id.*
[20] *Id.*

behavior patterns of alleged victims of child abuse, where the child's behavior is not within the common experience of the average juror.'"[21]

Delaware Rule of Evidence 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness' perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge     within the scope of Rule 702.[22]

In this case, the State provided necessary and adequate notice of expert witness testimony. The expert did not testify in attempt to quantify the probability of truth or falsity of the complainant's statements. Rather, the expert opined based on her professional experience that less than ten percent of child sex abuse victims have any genital injuries. This statement of fact was rationally based on the expert's experience. The statement was helpful to clearly understand a fact in issue that was outside the scope of persons without specialized knowledge.

---

[21] *Id.*

[22] D.R.E. 701.

It is axiomatic that all evidence and testimony by any party is designed to support a proposition favorable to that party. The fact that the expert's opinion may have bolstered the claimant's testimony is not, in itself, unduly prejudicial to Defendant. The probative value was not outweighed by the danger of unfair prejudice. The expert was subject to cross-examination. The issue of witness credibility remained in the sole discretion of the jury. Therefore, Trial Counsel did not have a duty to object to the expert opinion testimony. There is no prejudice to Defendant on this issue.

## CONCLUSION

The foundation for the § 3507 statements was established at trial when the State inquired into the truthfulness of the statements. Counsel had no duty to object to the admission of the § 3507 statements on that basis. No prejudice occurred because of lack of an objection.

Regarding D.R.E. 404(b), the Court properly applied the *Getz* factors. The Court did not err by basing its ruling on Counsel's proffer rather than reviewing the actual statement. Under *Deshields*, the admission of prior bad acts was not an abuse of discretion. Further, the Supreme Court found Trial Counsel's failure to object to the Court's D.R.E. 404(b) analysis or lack of objection to application of the *Deshields* factors did not result in prejudice.

The statistical evidence provided by the expert witness did not create unfair prejudice. The State provided adequate and necessary notice of the expert testimony. The testimony did not attempt to quantify the probability of truth or falsity of the victim's statement. The statement of fact rationally based on experience helped clarify a fact in issue outside the scoop of persons without specialized knowledge. Trial Counsel did not have a duty to object to expert opinion testimony. No prejudice occurred because of Trial Counsel's failure to object.

As a result of these findings, there is no cumulative effect of Trial Counsel's errors that could warrant a new trial. In consideration of the entire record, the Court finds that Defendant has failed to establish ineffective assistance of Trial Counsel. Trial Counsel did not err in a manner that deprived Defendant of a fair trial.

**THEREFORE,** Defendant's Rule 61 Motion for Postconviction Relief is hereby **DENIED.**

**IT IS SO ORDERED.**

_____
The Honorable Mary M. Johnston