# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID Nos.  2107004126; 2109000366; |
| | ) |           2109003432 |
| ISRAEL LECOMPTE, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 4, 2024
Decided: March 6, 2024

## **ORDER**

*Upon the State of Delaware's Motion in Limine to Admit Prior Bad Acts*
**DENIED.**

Joseph Grubb, Esquire, Erika R. Flaschner, Esquire, and Anthony J. Hill, Esquire Deputy Attorneys General DEPARTMENT OF JUSTICE, 820 N. French Street, Wilmington, Delaware 19801, Attorneys for the State of Delaware.

Zachary A. George, Esquire, HUDSON JONES JAYWORK & FISHER, LLC, 225 South State Street, Dover, Delaware 19901; Adam Windett, Esquire, HOPKINS & WINDETT, LLC, 438 South State Street, Dover, Delaware 19901, Attorneys for Defendant Israel Lecompte.

**WHARTON, J.**

This 6th day of March 2024, upon consideration of the State of Delaware's Motion *in Limine* to Admit Prior Bad Acts ("Motion"); [1] Defendant Israel Lecompte's ("Lecompte") Answer, [2] and the record in this case it appears to the Court that:

1.      Lecompte is facing 79 charges, [3] mostly related to the time frame from June 9, 2021 to July 10, 2021. [4]  The Indictment charges Illegal Gang Participation, Murder First Degree, Attempted Murder First Degree, Conspiracy First Degree, Possession of a Firearm During the Commission of a Felony, Robbery First Degree, Reckless Endangering First Degree, Conspiracy Second Degree, Theft of a Motor Vehicle, Receiving Stolen Property, and Disregarding a Police Officer's Signal.  The Motion seeks to admit evidence of three carjackings occurring in Pennsylvania – one of July 1st and two on July 10th. [5]

2.      The following facts are taken from the Motion.  On July 1, 2021 at approximately 9:10 p.m., a black 2020 Nissan Maxima with tinted windows and

---

[1] State's Mot. *in Limine*, D.I. 31. (Docket items are from ID No. 2107004126.)
[2] Def.'s Answer to State's Mot. *in Limine*.
[3] D.I. 21.  Originally, Lecompte was charged with 81 counts, but the State entered *nolle prosequis* on two counts of Carrying a Concealed Deadly Weapon and submitted an amended indictment.  References to specific counts are to the amended indictment.
[4] Count 1 charges Lecompte with Illegal Gang participation from on or between November 11, 2018 to July 14, 2021.  D.I. 8.
[5] State's Mot. *in Limine*, D.I. 31.

black rims was stolen at gunpoint in Philadelphia by two men.[6] The men also took the victim's cell phone and a .38 caliber revolver.[7] No arrests have been made in that carjacking.[8] The next day, Quinton Dorsey was murdered in Wilmington.[9] The shooter and a shorter black male arrived in a black Nissan Maxima with tinted windows, black rims, and an out of state license plate.[10] Lecompte was identified as the shooter from a photo line-up.[11] Lecompte is charged with receiving stolen property for being in possession of the stolen Nissan Maxima on July 2nd.[12]

3. Two days later, a woman was robbed at gunpoint in Wilmington by two black males while pumping gas at a gas station.[13] The robbers' vehicle appeared to be a black Nissan with tinted windows and black rims.[14] About two hours later, a man was robbed at gunpoint while mowing a neighbor's lawn in Wilmington.[15] The robber was in a black 4-door sedan with tinted windows.[16] Lecompte was identified in a photo line-up.[17] While taking the victim's statement, Wilmington police officers

---

[6] *Id.* at 2.
[7] *Id.* at 3.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*; Amended Indictment Count 27.
[13] *Id.* at 3-4.
[14] *Id.* at 4.
[15] *Id.*
[16] *Id.*
[17] *Id.*

3

observed the suspect vehicle in both robberies drive by on a nearby street.[18] The vehicle appeared to be a black Nissan Maxima with tinted windows and black rims.[19] About 20 minutes later, shots were fired a few blocks away.[20] Witnesses stated that the shooter was in a black Nissan Maxima with tinted windows and black rims.[21] Shell casings from this shooting were ballistically matched to casings from the Quinton Dorsey homicide two days earlier.[22] Lecompte is charged with receiving stolen property for being in possession of the stolen Nissan Maxima on July 4th.[23]

4.    The next day, Matima Miller was shot and killed in Wilmington.[24] A vehicle involved was described by witnesses as a dark colored Nissan.[25] Surveillance videos showed a black Nissan Maxima with tinted windows and black rims in the area.[26] Projectiles recovered from this homicide were consistent with the .38 caliber family.[27] On July 7th, the stolen black Nissan Maxima was recovered in Claymont.[28] Fingerprints lifted from the Maxima matched Lecompte.[29]

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at 5.
[22] *Id.*
[23] *Id.*; Amended Indictment Count 37.
[24] *Id.*
[25] *Id.*
[26] *Id.* at 5-6.
[27] *Id.* at 5.
[28] *Id.*
[29] *Id.* at 6.

5.	On July 10, 2021, two vehicles, a blue Honda CRV and a 2007 red Chrysler were stolen in Pennsylvania at gunpoint by two black males.[30]  The Honda CRV was stolen in Philadelphia at about 6:06 a.m.[31]  One of the robbers took the Honda, while the other fled in a black car.[32]  The Chrysler was stolen in Chester at about 7:35 a.m.[33]  One of the robbers was wearing a black hoodie with white drawstrings and a white logo on the left chest.[34]  The Honda was recovered on July 10th in Chester at 9:57 a.m.[35]  Surveillance video and witnesses establish that a black male wearing a ski mask got out of the stolen Honda and got into the Chrysler at about 7:35 a.m.[36]

6.	Prior to both carjackings in Pennsylvania, at approximately 3:34 a.m., in Wilmington, a 2020 silver Nissan Maxima was stolen by two men.[37]  That vehicle was later recovered in Philadelphia on July 18th.[38]  At about 4:03 a.m., Wilmington Police captured an Instagram Live video on the account "izzyioo"[39]  The video depicted Lecompte, wearing a black hoodie with white drawstrings and a white logo

---

[30] *Id.* at 7.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 7-8.
[37] *Id.* at 6.
[38] *Id.*
[39] *Id.*

on the upper left chest, a black head cover, and black latex gloves.[40] He appears to be heading north on I-95 towards Philadelphia.[41] A second Instagram Live video depicts Lecompte wearing the same sweatshirt, but not wearing gloves.[42]

7.      At approximately 4:15 p.m. there was a call for shots fired from a vehicle in Wilmington on Jefferson Street.[43] The suspect vehicle was a red Chrysler and one of the shooters was wearing a black hoodie with white drawstrings.[44] A high speed chase ensued resulting in the Chrysler crashing.[45] The occupants fled, but the description of one of them matched the clothing Lecompte was wearing in the Instagram Live videos.[46] A fingerprint from the Chrysler matched Lecompte.[47] Also, a cell phone was recovered with a State of Delaware identification card belonging to Lecompte.[48] Lecompte is charged with receiving stolen property in connection with the Chrysler.[49]

8.      The State moves to admit evidence of the July 1st carjacking of the 2020 Nissan Maxima and the July 10th carjackings of the Honda CRV and the 2007

---

[39] *Id.* at 6-7.
[41] *Id* at 7.
[42] *Id.*
[43] *Id.* at 8.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] Amended Indictment Count 72.

Chrysler pursuant to D.R.E. 404(b).[50] Specifically, the State argues that evidence of these bad acts should be admitted to prove identity, preparation and opportunity.[51] Alternatively, the State contends the evidence is admissible under the Inextricably Intertwined Doctrine.[52]

9. While conceding that identity and opportunity are proper purposes for admitting evidence of prior bad acts under D.R.E. 404(b), Lecompte argues that the evidence should not be admitted because its probative value is substantially outweighed by its prejudicial effect. [53]

10. "[A] party who intends to introduce evidence pursuant to D.R.E. 404(b) should first seek a ruling from the trial judge as to the admissibility of the evidence."[54] "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."[55] However, "[t]his evidence may be admissible for another purpose, such

---

[50] State's Mot. *in Limine*, at 9, D.I. 31.
[51] *Id.*
[52] *Id.* at 21-22.
[53] Def.'s Ans to State's Mot. *in Limine*. Lecompte appears to be under the mistaken impression that the State also is seeking to admit evidence of the .38 caliber revolver stolen with the 2020 black Nissan Maxima on July 1st.[53] He devotes a good bit of argument opposing admission of that evidence.[53] The State represents that it will not seek admission of that evidence.[53]
[54] D.R.E. 404, Comment.
[55] D.R.E. 404(a)(1).

as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[56]

11. In *Getz v. State*,[57] the Delaware Supreme Court identified six factors a trial court should take into account when considering the admissibility of evidence from other crimes under D.R.E. 404(b):

> (1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue. (2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic assumption against evidence of bad character of criminal disposition. (3) The other crimes must be proved by evidence which is plain, clear and conclusive. (4) The other crimes must not be too remote in time from the charged offense. (5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403. (6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for admission as required by D.R.E. 105.[58]

Regarding *Getz's* fifth factor, D.R.E. 403 allows the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

---

[56] D.R.E. 404(b)(2).

[57] 538 A.2d 726 (Del. 1988).

[58] *Id.* at 734 (internal citations and quotations omitted).

delay, wasting time, or needlessly presenting cumulative evidence."[59] *Deshields v. State*[60] identified the following nine considerations for the D.R.E. 403 balancing test:

> (1) the extent to which the point to be proved is disputed; (2) the adequacy of proof of the prior conduct; (3) the probative force of the evidence; (4) the proponent's need for the evidence; (5) the availability of less prejudicial proof; (6) the inflammatory or prejudicial effect of the evidence; (7) the similarity of the prior wrong to the charged offense; (8) the effectiveness of limiting instructions; and (9) the extent to which prior act evidence would prolong the proceedings.[61]

12.     The first *Getz* factor requires that the evidence of other crimes must be material to an issue or ultimate fact in dispute. Here, due to video surveillance and witness testimony, there appears to be little, if any, dispute about what happened in each of the incidents to be tried. What is disputed is the identity of the person who committed the charged crimes. Therefore, the Court must consider whether the other crimes evidence is material to the issue of identification. In other words, the Court must consider whether the evidence is relevant, meaning that the evidence "has any logical tendency to make an ultimate fact in consequence more or less probable."[62]

---

[59] D.R.E. 403.

[60] 706 A.2d 502 (Del. 1998).

[61] *Id*. at 506.

[62] *Ward v. State,* 2020 WL 5785338, at *5 (Del. Sept. 28, 2020) (citing *Getz,* 538 A.2d 734; D.R.E. 401).

9

13. The Court first turns to the crimes alleged to be related to the black Nissan Maxima. A black Nissan Maxima with tinted windows and black rims was identified in the Quinton Dorsey murder on July 2nd, the robbery of a woman pumping gas in Wilmington on July 4th, the robbery of a man mowing his neighbor's lawn the same day, a shooting about 20 minutes after that robbery, and the murder of Matima Miller on July 5th. The Maxima was recover on July 7th. Fingerprints recovered from it matched Lecompte. The identity of the occupant(s) of the Maxima during those incidents manifestly is relevant to an issue or ultimate fact in dispute. The Court finds the first *Getz* weighs in favor of the State.

14. The second *Getz* factor favors the State as well. Identity, opportunity, and preparation (plan) are purposes specifically sanctioned by Rule 404(b).

15. The third *Getz* factor requires that the evidence to be introduced be "plain, clear, and conclusive."[63] The evidence that the carjackings occurred is not disputed. Further, the presence of Lecompte's fingerprints in the black Nissan Maxima and the Chrysler, together with witness testimony, clothing descriptions, Instagram Live videos, surveillance videos, and Lecompte's identification in the Chrysler constitute plain, clear, and convincing evidence that Lecompte committed the carjackings. The third *Getz* factor favors the State.

---

[63] *Getz,* 538 A.2d at 734.

16. The other crimes and the crimes in the case here occurred within a 10-day period. Moreover, the other crimes occurred during the same time frame as the crimes to be tried here. They are concurrent with the charged crimes. Thus, under *Getz's* fourth factor, the crimes are not too remote from the charged crimes.

17. *Getz's* fifth factor requires the Court to assess whether the probative value of the evidence is substantially outweighed by its prejudicial effect under D.R.E. 403 considering the *Deshields* factors.[64] The Court concludes as to the *Deshields* factors: 1) the identity of the suspect is wholly disputed; (2) video surveillance, witness testimony, clothing descriptions, and fingerprint identifications are adequate means of proving the prior conduct; (3) the evidence is strongly probative of Lecompte's identity, making it more probable that Lecompte committed the charged crimes; (4) the State does not have a strong need for this evidence to connect Lecompte to the charged crimes since Lecompte can be connected to the vehicles used in the charged crimes through witness identification, clothing descriptions, abandoned property, and, most importantly, fingerprints; (5) less prejudicial proof is available in the form of a stipulation from Lecompte that the vehicles were stolen,[65] or alternatively, limiting the testimony to the fact that the vehicles were stolen without additional testimony as to how they were stolen; (6)

---

[64] *Deshields*, 706 A.2d at 506.
[65] Lecompte has offered such a stipulation. *See,* Def's Ans. to State's Mot. *in Limine*, at 5.

11

evidence of gunpoint carjackings is inflammatory and creates a substantial risk that the jury will conclude Lecompte acted in the charged crimes consistently with a bad character; (7) the charged crimes include gunpoint robberies, of which the Pennsylvania carjackings are a variety; (8) limiting instructions are likely to be effective because the proffered evidence is no more inflammatory, and possibly less inflammatory than the charged crimes; and (9) the State believes that the introduction of the proffered evidence will not extend the estimated length of the trial.

18.     After carefully considering the *Deshields* factors, the Court finds that the probative value of the proposed bad act evidence is substantially outweighed by the danger of unfair prejudice. The Court agrees with Lecompte that when the vehicles were stolen is probative. When they were recovered is probative. But how they were stolen is not. In other words, evidence that Lecompte was in the vehicles between July 1st and July 10th is entirely probative. But, whether he bought them, rented them, borrowed them, or carjacked them at gunpoint is not. Moreover, much of the evidence proving that Lecompte carjacked the Nissan Maxima and the Chrysler is the same evidence that places him in those vehicles during the charged crimes and is admissible without reference to the carjackings. Because the carjacking of the Honda CRV only serves as a "bridge" to the carjacking of the

12

Chrysler, and because the carjacking of the Chrysler is inadmissible, evidence of the carjacking of the Honda CRV likewise is inadmissible.

19.    The sixth *Getz* factor involves a limiting instruction.  Given the Court's determination to exclude the bad act evidence, no limiting instruction is necessary.

20.    Alternatively, the State seeks admission of the carjackings under the Inextricably Intertwined Doctrine.[66]  It argues that exclusion of the carjacking evidence "'would create a chronological and conceptual void that would likely result in significant confusion.'"[67]  In its view such a chronological void would exist as to when Lecompte first had access to the Nissan Maxima and the Chrysler that were used in the crimes.[68]  Given that the State will be permitted to introduce evidence when the vehicles were stolen, it is clear to the Court that no such chronological void will exist.

21.    The Court finds that both the *Getz* factors and the *Deshields* factors weigh in against admission of the bad act evidence.  Nor is the Court persuaded that such evidence should be admitted under the Inextricably Intertwined Doctrine.

---

[66] State's Mot. *in Limine*, at 21-23, D.I. 31.
[67] *Id*. at 21 (quoting *State v. Pope*, 632 A.2d 73, 76 (Del. 1993)).
[68] *Id.* at 23.

**THEREFORE**, the State's Motion to Admit the Prior Bad Acts is **DENIED.**

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton. J.