# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID Nos.  2107000514 A/B; 2107000202 A/B; |
| | ) | 2106004632 A/B; 2106004704 A/B |
| KEITH GIBSON, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: September 26, 2023
Decided: October 23, 2023

## ORDER

*Upon Defendant Keith Gibson's Motion to Suppress Evidence Seized from Defendant's iPhone*
**DENIED.**

*Upon Defendant Keith Gibson's Motion to Suppress Evidence Purportedly Seized from 2753 North Croskey Street, Philadelphia, Pennsylvania*
**DENIED.**

*Upon the State of Delaware's Motion in Limine to Admit Evidence of Prior Acts Pursuant to D.R.E. 404(b)*
**GRANTED IN PART AND DENIED IN PART.**

John W. Downs, Esquire, Ipek Kurul, Esquire, and Samuel B. Kenney, Esquire, Deputy Attorneys General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, Delaware 19801, Attorneys for the State.

Megan J. Davies, Esquire, 716 North Tatnall Street, Wilmington, Delaware 19801; Richard Sparaco, Esquire, LAW OFFICE OF RICHARD SPARACO, LLC, 1920 Fairfax Avenue, Cherry Hill, New Jersey 08003, and P.O. Box 371, Lewes, Delaware 19958, Attorneys for Defendant Keith Gibson.

**WHARTON, J.**

This 23rd day of October 2023, upon consideration of Defendant Keith Gibson's ("Gibson") Motion to Suppress Evidence Seized from Defendant's iPhone ("Motion to Suppress-iPhone"),[1] and his Motion to Suppress Evidence Purportedly Seized from 2753 North Croskey Street, Philadelphia, Pennsylvania ("Motion to Suppress-Residence"),[2] and the State's Motion *in Limine* to Admit Evidence of Prior Acts Pursuant to D.R.E. 404(b) ("Motion *in Limine*"),[3] the parties submissions, argument, and the record in this case it appears to the Court that:

1.     Gibson is facing forty-one charges stemming from five separate criminal investigations for crimes that took place between May 15, 2021 and June 8, 2021.[4]  Throughout the pendency of this case, Gibson's counsel has changed. Eugene Mauer, Esquire and Elise Wolpert, Esquire (collectively "prior counsel") previously represented Gibson.   Megan Davies, Esquire and Richard Sparaco, Esquire (collectively "current counsel") now represent Gibson.  The Court has issued

---

[1] D.I. 41.  (Docket Item numbers are from ID No. 2106004632.)
[2] D.I. 108. (Motion under Seal.)
[3] This motion was filed under seal and does not have a docket item number.
[4] Only the background specifically relevant to each motion is discussed here. For additional background, see *State v. Gibson*, 2022 WL 16642860, at *1 (Del. Super. Ct. Nov. 2, 2022) & *State v. Gibson*, 2022 WL 17430368, at *1-2 (Del. Super. Ct. Dec. 5, 2022).

several Opinions, deciding some issues and deferring others.[5]  The deferred issues are now ripe for decision,[6] as is the State's Motion *in Limine.*

      2.     **Gibson's Motion to Suppress Evidence Seized from Defendant's iPhone**.[7]  The Court deferred ruling on this motion in order to give Gibson an opportunity to address a search warrant issued on November 8, 2021 upon which the State represents that it relies.[8]  When they filed their motion, prior counsel were under the impression that the State was relying on a warrant issued on June 23, 2021.[9]  Current counsel filed a supplemental briefing/position[10] and the State responded.[11]  The motion was argued on September 26, 2023.

      3.     On June 8, 2021, Gibson was arrested in connection with the robbery of the Rite Aid at Fourth and Adams Streets in Wilmington.[12]  Upon Gibson's arrest, Wilmington Police seized a black Apple iPhone that was located on the right side of

---

[5] *State v. Gibson*, 2023 WL 2034444 (Del. Super. Ct. Feb. 15, 2023); *State v. Gibson*, 2023 WL 315332 (Del. Super. Ct. Jan. 19, 2023); *State v. Gibson*, 2022 WL 17430368 (Del. Super. Ct. Dec. 5, 2022); *State v. Gibson*, 2022 WL 16642860 (Del. Super. Ct. Nov. 2, 2022).

[6] Gibson also filed a Motion for Disclosure of Non-Recorded Portions of Witness Statements, D.I. 42. The Court, in its November 2, 2022 decision, deferred ruling on that motion in order to allow the parties to confer.  By letter dated May 15, 2023, Gibson withdrew that motion, D.I. 108.

[7] D.I. 41.

[8] *Gibson,* 2022 WL 16642860, at *6.

[9] *Id.*

[10] Def.'s Supplemental Briefing/Position, D.I. 108.

[11] State's Resp. to Mot. to Suppress-iPhone. (This document does not appear to have a docket item number.)

[12] Mot. to Suppress-iPhone at ¶ 2, D.I. 41.

Gibson's belt.[13] On November 8, 2021, Det. Scot Sowden of the Elsmere Police Department and Det. Joseph Wicks of the Wilmington Police Department obtained a warrant to search the iPhone.[14]

4. Gibson requests that the Court suppress the evidence seized pursuant to that warrant.[15] Gibson asserts that there was insufficient probable cause to establish a logical nexus between the alleged crimes and the iPhone;[16] and the warrant is a general warrant,[17] lacking particularity due to its limitless scope and insufficiently limited search timeframe.[18]

5. The State contends that the warrant was supported by probable cause establishing a nexus between the criminal activity and the iPhone.[19] The State submits that the warrant is not a general warrant because it properly limits the scope of the search to a specific timeframe and to specific areas of the phone.[20]

6. Both the Federal Constitution and the Delaware Constitution mandate that no warrants shall be issued without probable cause.[21] The Court examines the "four-corners" of the warrant to determine whether it is supported by probable cause,

---

[13] *Id.*
[14] State's Resp. to Mot. to Suppress-iPhone at ¶ 5.
[15] Def.'s Supplemental Briefing/Position at ¶ 22, D.I. 108.
[16] Mot. to Suppress-iPhone at ¶ 12, D.I. 41.
[17] *Id.* at ¶ 15.
[18] *Id.* at ¶12-13, ¶15.
[19] State's Resp. to Mot. to Suppress-iPhone at ¶ 26.
[20] *Id.* at ¶ 12.
[21] U.S. Const. amend IV; Del. Const. art. I, § 6.

4

meaning that the facts on the face of the affidavit must establish the existence of probable cause.[22] "In determining whether probable cause has been demonstrated, there must be a logical nexus between the items sought and the place to be searched."[23]

7. Search warrants seeking information stored on electronic devices, such as cell phones, "call for particular sensitivity given the 'enormous potential for privacy violations' that 'unconstrained searches of cell phones' pose."[24] The places or things to be searched or seized must be stated with particularity in the warrant affidavit.[25] To satisfy the particularity requirement for cell phones, search warrants "must describe what the investigating officers believe will be found on electronic devices with as much specificity as possible under the circumstances."[26] As to the timeframe of the warrant, "the search and seizure should be appropriately narrowed to the relevant time period so as to mitigate the potential for unconstitutional rummaging."[27]

---

[22] *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000).
[23] *Id*. (emphasis omitted).
[24] *Buckham v. State*, 185 A.3d 1, 18 (Del. 2018) (quoting *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016)).
[25]*Taylor v. State*, 260 A.3d 602, 612 (Del. 2021).
[26] *Wheeler*, 135 A.3d at 304.
[27] *Id*. at 305.

5

8.	The defendant has the burden to establish by a preponderance of the evidence that the search warrant was not supported by probable cause.[28] The reviewing court simply needs to ensure that there was a basis for probable cause in the warrant affidavit.[29] Courts "review a magistrate's probable cause determination with great deference, considering it as a whole in a practical, commonsense manner, and not on the basis of a hypertechnical analysis of its separate allegations."[30]

9.	"[A]n overly broad warrant can be redacted to strike out those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment. "When a warrant is broader than the probable cause that supports it . . . the Court may limit the scope of permissible evidence to that for which probable cause is present in the warrant."[31] In contrast, the only remedy for a general warrant is to suppress all evidence obtained thereby."[32]

10.	The warrant issued on November 8, 2021 authorized:

> A forensic examination for the digital contents of a black in color Apple iPhone with phone number xxx-xxx-xxxx, that is currently in the custody of the Wilmington Police Department, the digital contents of any attached storage device for the following dates: May 10, 2021 to June 8, 2021 (all dates are for 0001 hours EDT to 2359 hours

---

[28] *See State v. Sisson*, 883 A.2d 868, 875 (Del. Super. Ct. 2005), *aff'd,* 903 A.2d 288 (Del. 2006); *cf. McAllister v. State*, 807 A.2d 1119, 1123 (Del. 2002).

[29] *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).

[30] *See Sisson*, 903 A.2d at 296.

[31] *Waters v. State*, 2020 WL 507703, at *4 (Del. Super. Ct. Jan. 30, 2020).

[32] *Taylor,* 260 A.3d at 617 (quoting *United States v. Yusuf*, 461 F.3d 374, 393 n.19 (3d Cir. 2006) (internal citations omitted)).

6

EDT); specifically for call logs, GPS or other location-based data, SMS (text) messages and MMS (Multimedia) messages, internet & browser history, address book and contact list, images and/or videos, and information that may identify the owner of said phone, as that information is used or intended to be used for [various crimes including murder first degree, attempted murder first degree and robbery first degree].[33]

11.     Gibson does not contest that the affidavit in support of the search warrant sets out facts sufficient to establish probable cause that Gibson committed a series of crimes beginning on May 15, 2021 and ending on June 8, 2021, nor does he contest that the iPhone is his. Rather, he contends that the warrant is defective because the affidavit only states why law enforcement believes the defendant carried the iPhone during the search dates, but fails to show that it was used to commit the crimes or contain evidence of the crimes.[34]

12.     The warrant affidavit indicates that Gibson had a cell phone with a particular number, on or about the dates of the crimes. When Gibson was released from prison, he provided his iPhone number to probation and parole.[35] This number links Gibson to the iPhone after his prison release date, April 27, 2021,[36] and before the warrant's start date of May 10, 2021.[37] Within hours of the Metro PCS

---

[33] Search Warrant (Nov. 8, 2021), Ex. A, Def.'s Supplemental Briefing/Position, D.I. 108.
[34] *Id.* at ¶ 13.
[35] State's Resp. to Mot. to Suppress-iPhone at ¶ 27.
[36] *Id.* at ¶ 5.
[37] *Id*. at ¶ 13.

robbery/murder, video surveillance captured images of a suspect matching Gibson's description exiting the victim's vehicle in Philadelphia while using a cell phone.[38] A witness told the Wilmington Police that Gibson would often call the witness on the dates of the crimes.[39] That witness showed the police the witness' phone showing a text message from Gibson 37 minutes before the Metro PCS robbery/murder, another text six minutes after a shooting at 322 W. 9th Street in Wilmington, a call eight minutes after that same incident, calls bracketing by several hours a homicide at 1200 W. 3rd Street, and texts less than an hour before the Rite Aid robbery.[40] The affidavit seeks location information associated with these and possibly other communications which would be useful in identifying the location of the iPhone when the communications occurred.[41] Finally, one of the 23 Metro PCS phones that were stolen was activated and included Gibson's phone number it's contact list.[42] The affidavit seeks information from the iPhone to "track individuals who Gibson was contacting in order to sell the phones."[43]

13. Based on the foregoing, the Court concludes that the affidavit establishes probable cause that a logical nexus exists between the iPhone and the specified

---

[38] *Id.* at ¶ 29.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.* at ¶ 30.
[43] *Id.*

crimes. It is clear that the affidavit establishes that Gibson possessed the iPhone at or near the times of the various crimes identified in the affidavit and communicated with at least one person in close temporal proximity to those crimes. The warrant authorizes a forensic examination of the iPhone for "GPS or other location-based data."[44] Obviously, location data has significant evidentiary value. Further, information about other potential recipients of the stolen cell phones, including communications with such individuals, would have significant evidentiary value as well. It requires no leap of logic to conclude that if one recipient documented his association with Gibson in his cell phone, others might have done so too. It is also reasonable to conclude that Gibson, a person prohibited from possessing firearms or ammunition, used the iPhone to communicate with people illegally selling firearms. Such communications, which often include "photographs, videos, written descriptions, and price negotiations exchanged between buyer and seller" are consistent with the affiants' training and experience.[45]

14. Next, the Court turns to Gibson's contention that the warrant was a general warrant lacking in particularity, as opposed to being merely overbroad. On this point, Gibson states that the warrant permitted a "limitless[,]" "top-to-bottom[,]"

---

[44] Search Warrant (Nov. 8, 2021), Ex. A, Def.'s Supplemental Briefing/Position, D.I. 108.
[45] *Id.* at ¶ 30.

"lifetime[,]" search of the iPhone, with "blanket authority[.]"[46]  Gibson argues that the June 23rd warrant lacked particularity because its language allowed for the search of "'any and all storage devices'" for *inter alia* "'any information that might identify a possible owner of said phones'" and "'any and all information [,] used[,] or intended to be used for 'Murder First Degree and Robbery First Degree.'"[47]  The language of the November 8th warrant is less broad than the June 23rd warrant.  It allows for the search of the iPhone and "any attached storage device" but does not include the phrases "any and all," "any information", or "any and all information."[48]

15.    The language in the affidavit needs to be considered in a common sense way and as a whole.[49]  The words "any storage devices" are not considered alone. In *Thomas v. State,*[50] the Delaware Supreme Court discussed several cases - *Wheeler v. State,*[51] *Buckham v. State,*[52] and *Taylor v. State,*[53] - where it invalidated warrants "because investigators had a more precise description of the places to be searched than was provided in the warrant, and there was nothing in those cases to support an

---

[46] Mot. to Suppress-iPhone at ¶ 13, ¶ 15, D.I. 41.

[47] *Id.* at ¶ 14, D.I. 41.

[48] Search Warrant (Nov. 8, 2021), Ex. A, Def.'s Supplemental Briefing/Position, D.I. 108.

[49] *Taylor,* 260 A.3d at 617 (quoting *United States v. Yusuf*, 461 F.3d 374, 393 n.19 (3d Cir. 2006) (internal citations omitted)).

[50] 2023 WL 6379829 (Del. Oct. 2, 2023).

[51] 135 A.3d 282 (Del. 2016).

[52] 185 A.3d 1 (Del. 2018).

[53] 260 A.3d 602 (Del. 2021).

inference that evidence would have been found in the less precise locations which the warrants authorized law enforcement to search."[54] In Gibson's case, there are no facts in the warrant affidavit to suggest that police had a more precise description of the places to be searched in the iPhone. The warrant authorizes a search of the iPhone for communications, location data, internet browsing history, images and videos, and iPhone ownership information. There are sufficient facts in the warrant affidavit to establish probable cause to believe that evidence might be found in each of those locations.[55] The Court does not find that the warrant is broader than the probable cause that supports it.[56]

16.     Further, "there was no temporal limitation in *Wheeler*, *Buckham*, and *Taylor*."[57] The warrant in Gibson's case had a temporal limit, with its timeframe listed as May 10, 2021, through June 8, 2021.[58] The search warrant's timeframe was appropriately narrowed to a relevant time period. Gibson asserts that the search is a lifetime search, but this claim loses much of its force when the Court considers that the lifetime of the iPhone was only six weeks – from April 27th to June 8th and the crimes described in the affidavit began only 18 days into that lifetime and continued through the last day the police were authorized to search. Effectively, the crime

---

[54] *Thomas,* 2023 WL 6379829, at *14.
[55] *See* ¶¶ 12,13, *supra.*
[56] *See State v. Waters,* 2020 WL 507703, at *4 (Del. Super. Ct. Jan. 30, 2020).
[57] *Thomas*, 2023 WL 6379829, at *15.
[58] State's Resp. to Mot. to Suppress-iPhone at ¶ 5.

spree encompassed nearly the lifetime of the iPhone. Even that brief timeframe is limited to a specified date range of only about four weeks, beginning just five days before the first crime alleged.[59] The warrant authorized a search of the iPhone beginning on May 10th. At most, Gibson can claim that the warrant was temporally overbroad by five days so that any information seized during the period from May 10th through the 14th would be subject to suppression. But, it is certainly reasonable to conclude that preparation for the first charged crime could have begun five days in advance of its commission. In any event, the Court is unaware that there was anything of evidentiary value seized during that period.

17.     Lastly, Gibson contends that the State cannot justify the warrant on the basis of a need to obtain cell site location information ("CSLI").[60] Gibson states that a previous warrant included this same request and that there was no reason to believe that additional CLSI information would be recovered.[61] This contention is insufficient to invalidate the warrant inasmuch as the State has represented that it is not relying on information obtained in the previous June 23, 2021 warrant.

18.     The Court concludes that the affidavit established probable cause to believe that Gibson committed the crimes described, that he had the iPhone on the

---

[59] Mot. to Suppress-iPhone at ¶ 13, D.I. 41. On May 15, 2021, Gibson is alleged to have committed the robbery/murder at Metro PCS. Apparently the iPhone was activated on May 10th.
[60] Def.'s Supplemental Briefing/Position at ¶ 18, D.I. 108.
[61] *Id.*

dates the crimes were committed, and that there was a logical nexus between the crimes and the iPhone. Further, the Court finds that the warrant was not overbroad, either as to the timeframe or to the locations within the iPhone to be searched. Accordingly, Gibson's Motion to Suppress Evidence Seized from the Defendant's iPhone is **DENIED**.

19. **Gibson's Motion to Suppress Evidence Purportedly Seized from 2753 North Croskey Street, Philadelphia, Pennsylvania.**[62] The Court initially deferred resolution of Gibson's *pro se* motion to suppress items seized from his Philadelphia residence until defense counsel had received and reviewed the two Philadelphia search warrants.[63] Defense counsel, now having reviewed the warrants, filed a Motion to Suppress Evidence under seal on May 15, 2023.[64] The State responded on June 15th,[65] and the motion was argued on September 26th.

20. Significantly, the Motion to Suppress only challenges the first search warrant dated June 8, 2021.[66] That search warrant was obtained by the Philadelphia Police Department in connection with their investigation of the June 5th robbery/murder at Dunkin' Donuts on W. Lehigh Avenue.[67] Gibson argues that the

---

[62] Def.'s Mot. to Suppress-Residence, D.I. 108.
[63] *Gibson*, 2022 WL 17430368, at *5.
[64] D.I. 108.
[65] State's Resp. to Mot. to Suppress-Residence. (This response does not appear in the docket.)
[66] *Id.*
[67] Def.'s Mot. to Suppress-Residence, Ex. A, D.I. 108.

affidavit in support of the warrant failed to establish probable cause that evidence from the Dunkin' Donuts robbery/murder would be found at 2753 N. Croskey Street.[68] He contends that other than sometimes inaccurate motor vehicle records there is nothing in the affidavit to connect Gibson to the residence.[69] Even so, there is nothing in the affidavit to support probable cause that there would be any evidence *inside* the residence since all observations of Gibson were made *outside* of it.[70] Gibson also argues prophylactically that the "good faith exception," which otherwise might save a defective warrant, does not apply.[71]

21.     In response, the State maintains that the affidavit established a nexus between the Dunkin' Donuts robbery/murder and the Croskey Street address.[72] It points out that the affidavit describes a route of travel from Dunkin' Donuts to within a block of Gibson's residence where surveillance cameras lost sight of him at 5:47 a.m., minutes before the police were alerted to the crime.[73] The State argues that it would be logical for the judicial officer issuing the warrant to infer that immediately following the commission of the crime, Gibson fled to his home to "secure the

---

[68] *Id.* at 9-17.
[69] *Id.* at 13.
[70] *Id.*
[71] *Id.* at 18-22.  Delaware does not recognize a good faith exception under the Delaware Constitution and the State did not argue for one in its response. *See Dorsey v. State,* 761 A. 2d 807, 820 (Del. 2000).
[72] State's Resp. to Def.'s Mot. to Suppress-Residence.
[73] *Id.* at 7.

proceeds of the crime and shed any identifying clothing."[74]  Alternatively, the State argues that anything recovered in the execution of the June 8[th] warrant inevitably would have been discovered when a second unchallenged warrant was executed at 2753 Croskey Street on June 11[th] by the Philadelphia Police.[75]  Finally, the State argues that even if the first two warrants were defective, discovery still was inevitable because Delaware police would have sought a warrant had not the Philadelphia Police already done so.[76]

22.    The June 8th warrant authorized a search of 2753 N. Croskey Street for firearms, ammunition, ballistic evidence, clothing, electronic devices that store electronic data, including GPS data, identification, proof of residency and any other items of evidentiary value.[77]  The affidavit of probable cause stated that on June 5, 2021, surveillance video showed a suspect committing a robbery/murder at the Dunkin' Donuts at 532 W. Lehigh Ave. in Philadelphia.[78]  Police and medics responded to the scene at or before 5:51 a.m. and found the victim dead of a gunshot wound to the head.[79]  Video cameras inside the store captured the incident.[80] Multiple Real Time Cameras along with private cameras tracked the suspect's route,

---

[74] *Id.* at 8.
[75] *Id.* at 9-11.
[76] *Id.* at 11-12.
[77] Def.'s Mot. to Suppress-Residence, Ex. A, D.I. 108.
[78] *Id*.
[79] *Id.*
[80] *Id.*

described in detail in the affidavit, from Dunkin' Donuts to northbound in the 2700 block of N. Hemberger Street, one block east of 2753 N. Croskey Street, an address motor vehicle records indicate Gibson utilizes.[81]

23. Philadelphia Police also included facts from the investigation of the June 8, 2021, Rite Aid robbery.[82] On that date, Gibson was taken into custody after the robbery of the Rite Aid at 800 W. Fourth Street in Wilmington.[83] Soon after, Gibson was arrested at 814 W. Fifth Street.[84] The affidavit also stated that when Gibson was taken into custody, he was in possession of a black .357 revolver and that he was wearing a large faced wrist watch.[85] Both the revolver and the watch appear to match the revolver and watch possessed by the Philadelphia suspect.[86] Further, Gibson's facial features, including a "distinctive" mark on his forehead, depicted in a photograph provided by the Wilmington Police, appear identical to the suspect in Philadelphia.[87] Later that afternoon, on their own accord, Philadelphia

---

[81] *Id.* The affidavit described the suspect "fleeing west on Huntington St. as well as crossing Broad St. at Cumberland St. The suspect is then tracked on multiple cameras on foot SB 2400 N. Carlisle St, and then continuing WB on York St. to the area of 2400 W. York St. Real Time Crime Center Cameras and private cameras capture the suspect walking NB on 23rd St. at Huntington, crossing over Oakdale St. and crossing over 2200 Lehigh Avenue towards 2700 N. Hemberger St." *Id.*
[82] *Id.*
[83] *Id*.
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.*

Police obtained a search warrant for 2753 N. Croskey Street and seized evidence.[88] On June 11, 2021, the Philadelphia Police obtained a second warrant to search that address and seized additional evidence.[89]

24.   Just as with the search warrant for Gibson's iPhone,[90] the Court examines the "four-corners" of the affidavit to determine if it establishes the existence of probable cause.[91] "Concrete firsthand evidence that the items sought are in the place to be searched is not always required in a search warrant. The question is whether one would normally expect to find those items in that place."[92] The defendant has the burden to establish by a preponderance of the evidence that a search warrant was not supported by probable cause.[93] The reviewing court simply needs to ensure that there was a basis for probable cause.[94] The issuing judicial officer's determination of the existence of probable cause is owed great deference.[95]

25.   Gibson contends that the warrant affidavit was not supported by probable cause.  He correctly points out that the warrant affidavits in both *State v.*

---

[88] Mot. to Suppress-Residence at ¶ 2, D.I. 108.
[89] *Id.* at ¶ 27.
[90] *See* ¶ ¶ 6,8, *supra.*
[91] *Dorsey*, 761 A.2d at 811.
[92] *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980).
[93] *See Sisson*, 883 A.2d at 875, *aff'd,* 903 A.2d 299 (Del. 2006); *cf. McAllister*, at 1123 (Del. 2002).
[94] *Gates*, 462 U.S. at 238-39.
[95] *Sisson*, 903 A.2d at 296.

*Ada*[96] and *State v. Cannon*[97] failed in that they were rooted in the affiants' opinions regarding the likelihood that contraband would be found in the places to be searched. Gibson's case is different in that the police listed certain facts, but expressed no opinion about the likelihood of evidence being found at 2753 Croskey Street. The question is whether those facts and any legitimate inferences drawn from those facts, support the issuing judicial officer's determination that probable cause existed to search the residence.

26.    On surveillance video, police observed a suspect committing the Dunkin' Donuts robbery/murder.[98] Gibson is identified as that suspect based on the photograph of him and other information provided by the Wilmington Police.[99] Also on surveillance video, police observed Gibson walking north on 2700 N. Hemberger Street in Philadelphia, a considerable distance from Dunkin' Donuts at 532 Lehigh Avenue.[100] Moreover, as described in the affidavit, the route Gibson took is not direct.[101] The 2700 Hemberger Street location is only one block west of 2753 N. Croskey Street.[102] Motor vehicle records tied Gibson to the N. Croskey Street

---

[96] 2001 WL 660227 (Del. Super. Ct. June 8, 2001).
[97] 2007 WL 1849022 (Del. Super. Ct. June 21, 2007).
[98] Def.'s Mot. Suppress-Residence, Ex. A, D.I. 108.
[99] *Id.*
[100] *Id.*
[101] *Id.*
[102] *Id.*

18

address.[103] Given Gibson's identification in the Dunkin' Donuts robbery/murder, the distance and route of his travel afterwards, the time of day, and, when last seen, his proximity to an address he utilizes, the Court is convinced that the affidavit establishes probable cause that Gibson fled to 2753 Croskey Street, and further, once he reached that destination, he went inside. Although there might be other explanations why Gibson travelled that indirect route to his house, going inside is the most logical. An obvious inference is that most, if not all of the items for which the warrant authorized the Philadelphia Police to search, might be found in Gibson's home.

27. Alternatively, the State asserts, even if the June 8th warrant was defective, any evidence recovered pursuant to the warrant would inevitably been discovered in a warrant executed on June 11th.[104] Inevitable discovery "provides [that] evidence, obtained in the course of illegal police conduct, will not be suppressed if the prosecution can prove that the incriminating evidence 'would have been discovered through legitimate means in the absence of official misconduct.'"[105] "One of the rationales for the exclusionary rule—deterrence of police misconduct—

---

[103] *Id.*

[104] *See* State's Resp. to Mot. to Suppress-Residence at ¶ 25.

[105] *Cook v. State*, 374 A.2d 264, 267-68 (Del. 1977).

is of diminished concern when police can demonstrate that they would have inevitably discovered the evidence through lawful conduct."[106]

28. The Court finds this argument persuasive for two reasons. First, Gibson does not challenge the June 11th warrant. Second, it is supported by probable cause. This second warrant authorized the Philadelphia Police to "Process 2753 N. Croskey Street as a crime scene recover any pertinent evidence relating to these incidents including any matching clothing and keys to a Cadillac, and any other items of evidentiary value, pertinent to this homicide investigation." [107] In addition to repeating details of the Dunkin' Donuts robbery/murder and the Rite Aid robbery, the June 11th search warrant affidavit states that the Metro PCS victim's vehicle was recovered in the 2400 block of N. 19th Street in Philadelphia, where Gibson was observed exiting from it.[108]

29. The State's final argument opposing suppression is another inevitable discovery argument based on *Martin v. State*,[109] In that case, a Delaware State Police detective travelled to Cincinnati, Ohio as part of a homicide investigation.[110] The Cincinnati Police conducted a warrantless search of the defendant's motel room.[111]

---

[106] *Roy v. State*, 62 A.3d 1183, 1189 (Del. 2012).
[107] State's Resp. to Def.'s Mot. to Suppress-Residence, Ex. A.
[108] *Id.*
[109] 433 A.2d 1025, 1031 (Del. 1981).
[110] *Id.*
[111] *Id.*

20

During this illegal search, the Cincinnati Police discovered a firearm.[112] The Delaware Supreme Court found that this evidence would have been discovered by Delaware State Police because they would have sought a search warrant had the illegal search not been conducted.[113] The State argues that even if both warrants are found to be invalid, the evidence still would have been legally discovered because Delaware police would have sought a search warrant if the Philadelphia Police had not done so first. Perhaps, but unlike *Martin* where a Delaware detective testified that he intended to seek a search warrant,[114] and the motel manager testified that he would have given the police consent to search if asked,[115] the State's assertion here is conjecture, unsupported by any such testimony.

30.     The Court determines that the June 8th Philadelphia search warrant was supported by probable cause. Further, it is plain to the Court that any items of evidentiary value recovered on June 8th inevitably would have been recovered on June 11th. Accordingly, the Defendant's Motion to Suppress Evidence Purportedly Seized from 2753 North Croskey Street, Philadelphia, Pennsylvania on June 8, 2021 is **DENIED**.

---

[112] *Id.*

[113] *Id.*

[114] *Martin,* 433 A.2d, at 1031.

[115] *Id,* at 1031-32.

31.     **The State's Motion *in Limine* to Admit Evidence of Prior Acts Pursuant to D.R.E. 404(b).**   The Court deferred ruling on the State's motion until the State disclosed the evidence it anticipated introducing at trial.[116]   This delay was necessary because the Court  had just ruled on Gibson's Motion to Sever.[117]   The Court noted that its decision potentially would "affect how the parties prepare for trial and the admissibility of evidence at each trial."[118]   In its motion, the State originally identified three items it sought to admit under D.R.E. 404(b).   They are a video of the Dunkin' Donuts robbery/murder in Philadelphia, a video of a shooting on June 8, 2021 at approximately 3:00 a.m. in which Secret Harris is alleged to be the victim,[119] and a prison video of Gibson taken on September 30, 2020 in which he identifies himself as "the Beast" and expresses his intention to "kill people" when he is released.[120]   The State has provided copies of the videos it seeks to introduce, as well as the video of the Metro PCS incident, to the Court as exhibits to its motion. Gibson opposes the admission of all three.[121]   After argument on September 26th, the State advised the Court and counsel by email on October 18th that, "After meeting with the State's ballistics experts this morning, the State has decided to withdraw a

---

[116] *Gibson*, 2022 WL 16642860, at *7.
[117] *Id.*
[118] *Id.*
[119] Charges related to this incident have been severed for trial.  *Gibson,* 2022 WL 16642860, at *4.
[120] State's Mot. *in Limine.*
[121] Def.'s Resp. to State's Mot. *in Limine*, D.I. 117.

portion of the proffered evidence in our 404B motion. Specifically, the State will not be using the ballistic match in the Secret Harris case as we had previously proffered in our motion as well as the hearing."[122]

32. On May 15, 2021 at approximately 5:15 p.m., video surveillance captured a masked suspect robbing a Metro PCS store in Elsmere, Delaware and killing an employee, Leslie Basilio.[123] The suspect, a black male, was carrying a black revolver in his right hand, wearing a gray hooded sweatshirt, blue jeans, a mask, gloves, a tactical-style belt, and white sneakers.[124] After forcing Basilio to collect phones, cash, and other items from the store, he had her put them in a white plastic bag.[125] He then took her to the rear of the store, out of public view, and fired one NYCLAD bullet into her head with a black revolver, killing her.[126] Basilio's car was stolen and later found in Philadelphia.[127] It was found five blocks from a residence that was determined to be Gibson's.[128]

33. On June 5, 2021, at approximately 5:00 a.m., video surveillance captured a suspect robbing a Dunkin' Donuts in Philadelphia, shooting and killing

---

[122] Email (Oct. 18, 2023) from Deputy Attorney General Ipek Kurul.
[123] State's Mot. in Limine, at ¶ 8.
[124] *Id.*
[125] *Id.*
[126] *Id.*
[127] *Id*. at ¶ 8-9.
[128] *Id*. at ¶ 9.

its manager, Christine Lugo.[129] Video surveillance showed Gibson, who is a black male, without a mask, accosting Lugo as he entered the store carrying a black revolver in his right hand.[130] He was wearing a dark gray hooded sweatshirt, pants, and gloves.[131] He took her to a back room where she emptied several cash register drawers before he fired a single shot into her head, killing her. The projectile recovered from the victim is a ballistic match to the gun recovered during Gibson's arrest.[132]

34. Also on June 5, 2021, at approximately 11:45 p.m., video surveillance captured a suspect in connection with the robbery and killing of Ronald Wright in Wilmington.[133] The man was wearing dark clothes and carrying a backpack.[134] No identification could be made, but the projectile used in the shooting of Ronald Wright was a .38 caliber class frangible bullet.[135] The three examined bullets indicated eight lands and eight grooves with a right twist.[136] Additionally, witness(es) determined that Ronald Wright's black sling bag was missing from the residence.[137]

---

[129] State's Mot. *in Limine* at ¶ 10.
[130] *Id.*
[131] *Id.*
[132] *Id.*
[133] *Id.* at ¶ 11.
[134] *Id.*
[135] *Id.*
[136] *Id.*
[137] *Id.*

35.     On June 6, 2021, at approximately 10:45 p.m., video surveillance captured the robbery of the Good Deli at Ninth and West Streets in Wilmington and the attempted murder of Belal Almansoori.[138]  The suspect was a black male, wearing a black hooded jacket, black baseball hat, black gloves , black pants, black sneakers, and what appears to be a black sling bag under his jacket.[139]  The suspect shot Almansoori, removed several items from the store, and shot Almansoori again.[140]  A projectile used to shoot Almansoori was a .38 caliber class frangible bullet.[141]  The examined bullets indicated eight lands and eight grooves with a right twist.[142]

36.     On June 8, 2021, at approximately 3:00 a.m., video surveillance captured Secret Harris awaking after sleeping in her car at Fifth and Tatnall Streets in Wilmington.[143]  Harris believed that her cell phone had been stolen.[144]  She approached the suspect, who hit Harris on the head with a pistol.[145]  Harris fell, stood up, stumbled to her car, and began to drive away.[146]  The suspect shot an estimated

---

[138] *Id.* at ¶ 12.
[139] *Id.*
[140] *Id.*
[141] *Id.*
[142] *Id.*
[143] *Id.* at ¶ 13.
[144] *Id.*
[145] *Id.*
[146] *Id*

four to six times at Harris.[147]  At least some of the bullets hit Harris' car.[148]  High definition video show the suspect to be Gibson who was wearing a black hooded jacket, a black baseball hat, black gloves, black pants, black sneakers with shiny black soles, and carrying a black sling bag.[149]  The projectiles used in the shooting were .38 caliber class frangible bullets.[150]  The examined bullets indicated eight lands and eight grooves with a right twist.[151]  The Secret Harris shooting projectiles were a ballistic match to the projectile in the Dunkin' Donuts robbery/murder, and the revolver recovered during Gibson's arrest.[152]

37.    Later that morning, at 8:20 a.m., the Rite Aid at Fourth and Adams Streets in Wilmington was robbed by two male suspects, one black and one white.[153] The black male wore a gray hooded sweatshirt cut off at the elbows, a black long sleeve undergarment, black gloves, black pants, and black sneakers with shiny black soles and displaying a black revolver.[154]  His face was concealed.[155]  A GPS tracking device was included with the money that the black suspect took.[156]  The device

---

[147] *Id.*
[148] *Id.*
[149] *Id.*
[150] *Id.*
[151] *Id.*
[152] *Id.* at ¶ 10.
[153] *Id.* at ¶ 14.
[154] *Id.*
[155] *Id.*
[156] *Id.*

26

tracked the suspect to the 800 block of West Fifth Street, a few blocks away from the Rite Aid.[157]

38.     Gibson was arrested hiding in the backyard of 812 West Fifth Street.[158] Gibson had an empty gun holster on his person.[159]  In his pockets, Gibson had multiple live rounds of .357 ammunition.[160]  Police also found a .357 revolver near Gibson's hiding spot.[161]  The .357 revolver had live ammunition in the chamber including one .38 caliber class NYCLAD bullet, one .357 caliber frangible bullet, and four .357 caliber lead bullets.[162]  The .357 revolver's barrel had eight lands and eight grooves with a right twist.[163]  Gibson also had a black sling bag.[164]

39.     Upon motion of Gibson's prior counsel, the Court severed Gibson's charges into three categories.[165]  The category designated "'business robberies' and threats of bodily harm/death" is the first category to be tried.[166]  The crimes in this category are the robbery of the Metro PCS and murder of Leslie Basilio, the

---

[157] *Id.*
[158] *Id.*
[159] *Id.*
[160] *Id.*
[161] *Id.*
[162] *Id.*
[163] *Id.*
[164] *Id.*
[165] *Id.* at ¶ 1.
[166] *Id.*

robbery/murder of Ronald Wright, the robbery of Good Deli and the attempted murder of Belal Almansoori, and the robbery of Right Aid.[167]

40.     Pursuant to D.R.E. 404(b), the State seeks to admit evidence of the Dunkin' Donuts robbery/murder for the purpose of identification.[168] It has withdrawn its request to introduce ballistics evidence from the Secret Harris shooting.[169] The State alleges that Gibson committed the Dunkin' Donuts robbery/murder, and that the evidence from that case will identify him in the Metro PCS incident.[170] The State alleges that Gibson otherwise cannot be adequately identified in that incident because he was masked.[171] The State believes that there are commonalities linking the Dunkin' Donuts case with the Metro PCS case that will assist in identifying Gibson in the latter.[172]

41.     Gibson argues that the evidence should not be admitted because it does not prove identity.[173] Gibson also argues that the admission of the Secret Harris evidence would rejoin the trial groups and cause Gibson to have to defend against these crimes twice.[174]

---

[167] *Id.*
[168] *Id.*
[169] *See* n. 130, *supra.*
[170] State's Mot. *in Limine.*
[171] *Id.*
[172] *Id.*
[173] Def.'s Reply to State's Mot. *in Limine* at ¶ 9, D.I. 117.
[174] *Id.* at 8.

42. "[A] party who intends to introduce evidence pursuant to D.R.E. … 404(b) should first seek a ruling from the trial judge as to the admissibility of the evidence."[175] "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."[176] However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[177]

43. In *Getz v. State*,[178] the Delaware Supreme Court identified six factors a trial court should take into account when considering the admissibility of evidence from other crimes under D.R.E. 404(b):

> (1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue. (2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic assumption against evidence of bad character of criminal disposition. (3) The other crimes must be proved by evidence which is plain, clear and conclusive. (4) The other crimes must not be too remote in time from the charged offense. (5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403. (6) Because such evidence is admitted for a limited purpose, the jury should

---

[175] D.R.E. 404, Comment.
[176] D.R.E. 404(a)(1).
[177] D.R.E. 404(b)(2).
[178] 538 A.2d 726 (Del. 1988).

be instructed concerning the purpose for admission as required by D.R.E. 105.[179]

Regarding *Getz's* fifth factor, *Deshields v. State*[180] identified the following nine considerations for the D.R.E. 403 balancing test:

> (1) the extent to which the point to be proved is disputed; (2) the adequacy of proof of the prior conduct; (3) the probative force of the evidence; (4) the proponent's need for the evidence; (5) the availability of less prejudicial proof; (6) the inflammatory or prejudicial effect of the evidence; (7) the similarity of the prior wrong to the charged offense; (8) the effectiveness of limiting instructions; and (9) the extent to which prior act evidence would prolong the proceedings.[181]

44.    The first *Getz* factor requires that the evidence of other crimes must be material to an issue or ultimate fact in dispute. Here, due to video surveillance, there appears to be little, if any, dispute about what happened in each of the incidents to be tried. What is vigorously disputed is the identity of the person who committed the charged crimes. In each incident the perpetrator was masked, making facial identification difficult, if not impossible. Therefore, the Court must consider whether the other crimes evidence is material to the issue of identification. In other words, the Court must consider whether the evidence is relevant, meaning that the

---

[179] *Id.* at 734 (internal citations and quotations omitted).
[180] 706 A.2d 502 (Del. 1998).
[181] *Id*. at 506.

evidence "has any logical tendency to make an ultimate fact in consequence more or less probable."[182]

45.    The Court first turns to the Dunkin' Donuts robbery/murder evidence. The State argues that the near identical *modus operandi* in both the Dunkin' Donuts robbery/murder, where it asserts there is plain, clear, and conclusive evidence of Gibson's guilt, and the Metro PCS robbery/murder makes Gibson's identity in the latter more probable. In truth, the two incidents are nearly identical, save for the location and the fact that the suspect in the Metro PCS incident was masked and the suspect in the Dunkin' Donuts incident was not. The incidents occurred three weeks apart. In both incidents, a single black male accosted a lone female employee of a small business at a time when there were no other employees or customers present. The men were armed with a black revolver which they carried in their right hand. They wore hooded sweatshirts, pants, and gloves. The men appeared to be of the same height and build. The perpetrators had each victim collect property/cash for them and executed each victim in a back room of the store by firing a single shot from a revolver into their heads. The Court finds these commonalities sufficient to make it more probable that the perpetrator of the Dunkin' Donuts robbery/murder also committed the Metro PCS robbery/murder. But these commonalities become

---

[182] *Ward v. State,* 2020 WL 5785338, at *5 (Del. Sept. 28, 2020) (citing *Getz,* 538 A.2d 734; D.R.E. 401).

31

even more compelling when one observes the video depiction of the perpetrators in each incident. The videos allow the viewer to compare, over an extended period of time, other characteristics of the men, including their mannerisms, gait, demeanor, and overall bearing. Those comparisons also support the conclusion that a single perpetrator committed both robbery/murders. The Court finds the first *Getz* factor to be met.

46. The second *Getz* factor is met as well. Identity is a purpose specifically sanctioned by Rule 404(b).

47. The third *Getz* factor requires that the evidence to be introduced be "plain, clear, and conclusive."[183] In the Dunkin' Donuts robbery/murder, video surveillance shows the face of the suspect. In that case, the perpetrator fled to within a block of Gibson's Philadelphia residence. Ballistics evidence matches the revolver recovered when Gibson was arrested. The Court finds the facial identification,[184] the flight of the Dunkin' Donuts shooter to within a block of Gibson's Philadelphia residence, and the ballistics matches to be evidence that is "plain, clear, and conclusive" that Gibson committed the robbery/murder at Dunkin' Donuts, satisfying the third *Getz* factor.

---

[183] *Getz,* 538 A.2d at 734.
[184] *See,* June 8, 2021 search warrant affidavit in which Gibson is identified, Def.'s Mot. to Suppress-Residence, Ex. A, D.I. 108.

48.     The other crimes and the crimes in the case here occurred within a three-week period.   Moreover, the other crimes were interspersed between the crimes to be tried here.   Thus, under *Getz's* fourth factor, the crimes are not too remote from the charged crimes.

49.     *Getz's* fifth factor requires the Court to assess whether the probative value of the evidence is substantially outweighed by its prejudicial effect under D.R.E. 403,[185] considering the *Deshields* factors.[186]   The Court concludes: 1) the identity of the suspect is wholly disputed; (2) clear video surveillance and reliable ballistics evidence are adequate means of proving the prior conduct; (3) the evidence is strongly probative of Gibson's identity, making it more probable that Gibson committed the charged crimes; (4) the State has a strong need for this evidence to connect Gibson to the charged crimes since the suspect's face is covered in the charged crimes and the ballistics evidence in the charged crimes is less probative than that in the proposed evidence; (5) neither party cites the availability of less prejudicial proof; (6) video evidence of the murder of Christine Lugo is inflammatory and difficult to watch, but its inflammatory character is mitigated somewhat by the fact that the jury will be exposed to videos of the other shootings of Leslie Basilio and Belal Almansoori and by the State's offer to redact the actual

---

[185] *Getz,* 538 A.2d at 534.
[186] *Deshields*, 706 A.2d at 506.

33

shooting of Christine Lugo from the video the jury watches; (7) the Dunkin' Donuts robbery/murder is similar in character to the charged crimes; (8) limiting instructions are likely to be effective because the proffered evidence is no more inflammatory, and possibly less inflammatory when redacted, than the charged crimes; and (9) the State believes that the introduction of the proffered evidence will take no more than one day, which will not unduly prolong what is estimated to be a four-week trial.

50.     As to the sixth *Getz* factor, the Court will give a limiting instruction upon admission of the other crimes' evidence.[187]  That instruction will adhere to the requirements in *Milligan v. State*[188] by defining the specific purpose for which the admitted evidence may be used, *i.e.,* identification, and specifying that the evidence shall not be considered for any other purpose.[189]

51.     The Court finds that both the *Getz* factors and the *Deshields* factors weigh in favor of including the identification evidence, as redacted, from the Dunkin' Donuts robbery/murder.  The State shall redact the actual shooting of Christine Lugo from the video it plays for the jury at trial.  The Court will allow testimonial evidence of the shooting and the collection of the projectile, however. Accordingly, the State's motion to admit the video evidence of the Dunkin' Donuts robbery/murder is **GRANTED.**

---

[187] *Getz*, 538 A.2d at 734.
[188] 761 A.2d 6 (Del. 2000).
[189] *Id.* at 10.

52.    The State has withdrawn its request to admit ballistic evidence from the Secret Harris shooting under D.R.E. 404(b).  To the extent the State seeks to admit video or still photographs from that incident that do not depict criminal conduct for another purpose, such as identifying Gibson in the charged crimes by his clothing, D.R.E. 404(b) is not implicated.

53.    **Department of Corrections Video Statements.** On September 30, 2020, while incarcerated, Gibson was videotaped by Department of Corrections ("DOC") staff during a cell relocation.[190]  During the recording, Gibson makes multiple statements that the State seeks to introduce into evidence.[191]  The State has provided the Court and defense counsel with a transcript of the statement highlighting the specific comments it seeks to admit.  It seeks to use the DOC statements to establish Gibson's state of mind and future intent to "kill people".[192]

54.    Gibson objects to admitting the video based both on its optics and substance.[193]  The optics are unduly prejudicial because the video depicts Gibson inside a prison.[194]  Substantively, Gibson contends that his statement, "do what I do,"

---

[190] State's Mot. *in Limine* at ¶ 6.

[191] The State's motion included some of the statements that it wishes to introduce, as well as a copy of the DOC video.  The State's reply included part of the of the transcript.  After argument, the State submitted a transcript identifying all of the comments it seeks to admit.

[192] *Id.* at ¶ 7.  During oral argument the State withdrew its request to present statements where Gibson identifies himself as "the Beast" to establish identity.

[193] Def.' Reply to State's Mot. *in Limine*, D.I. 117.

[194] *Id.* at 3.

*i.e.,* kill people, is improper propensity evidence.[195] The statement that he will "kill people" is insufficiently specific to show Gibson's future intent to kill the victims here.[196] Further, the prejudicial effect of Gibson's general statement that he will "kill people" substantially outweighs it probative value as to the victims in this case,[197]

55. The State concedes that there is no Delaware precedent directly on point.[198] Instead, it cites cases where Delaware Courts have admitted into evidence rap videos and songs. In *Taylor v. State*,[199] a rap video identified the defendant with a certain gang, and in *Llyod v. State*,[200] a rap video identified the defendant with a crime that had already occurred. These gang cases did not involve questions of admissibility based on state of mind or future intent to commit a crime, since the crimes had already happened or were in the process of happening.

56. Gibson understates the concerns about the optics of the prison video. Not only was it recorded in prison, but when Gibson is speaking, he is surrounded by correctional officers in full riot gear. Perhaps some of that very substantial prejudice could be alleviated if the State were to play an audio recording of Gibson

---

[195] *Id.* at 4.
[196] *Id. at* 4-6.
[197] *Id.* at 6.
[198] State's Mot. *in Limine* at n.5.
[199] 76 A.3d 791 (Del. 2013).
[200] 249 A.3d 768 (Del. 2021).

rather than a video, but the statement still must be tethered to some foundational context. Any such context would be unduly prejudicial.

57. Substantively, the Court concludes that Gibson's statements are not specific enough to show intent.[201] They have limited probative value because they do not express a future intent to kill any of the specific victims or even a class of victims to which they might belong. They are simply statements declaring a propensity to kill and are offered to show that Gibson acted in conformity with that character trait, and not a purpose sanctioned by D.R.E. 404(b). Accordingly the State's motion to admit the DOC video is **DENIED**.

**THEREFORE**, Defendant Keith Gibson's Motion to Suppress Evidence Seized from Defendant's iPhone is **DENIED**. His Motion to Suppress Evidence Purportedly Seized from 2753 North Croskey Street, Philadelphia, Pennsylvania is **DENIED.** The State's Motion *in Limine* to Admit Evidence of Prior Acts Pursuant to D.R.E. 404(b) is **GRANTED** as to the Dunkin' Donuts video and **DENIED** as to the Department of Corrections video. The State's withdrew its request to admit ballistic evidence based on the Secret Harris video.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton. J.

---

[201] *Id.* at 160.